UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JUSTIN RINDOS,<br><br>            Plaintiff,<br><br>v.<br><br>PARTNERS GROUP (USA), INC.; JANE<br>DOE I-V (these names being fictitious as<br>their present identities are unknown); JOHN<br>DOE I-V (these names being fictitious as<br>their present identities are unknown); XYZ<br>CORPORATION I-V (these names being<br>fictitious as their present identities are<br>unknown)<br><br>            Defendants. | Civil Action No.<br><br>**COMPLAINT AND<br>JURY DEMAND** |

## PARTIES AND JURISDICTION

1.     Plaintiff, Justin Rindos ("plaintiff" or "Mr. Rindos"), has an address of 621 Green Briar Court, Westfield, NJ 07090, and at all times relevant hereto was employed by Defendant Partners Group (USA), Inc.

2.     Defendant, Partners Group (USA), Inc. ("Partners Group," "defendant" or "the Company"), is a company with the principal business address of W. R. Grace Building, 1114 Avenue of the Americas, 37th Floor, New York, NY 10036, which had the plaintiff in its employ during the relevant time periods herein.

3.     Jurisdiction is conferred upon this Court by 28 U.S.C. § 1332, as the matter in controversy in this matter is more than $75,000 and complete diversity of citizenship exists given that plaintiff is a citizen of New Jersey and defendant Partners Group (USA), Inc. is a citizen of New York.

**VENUE**

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as Plaintiff is located in this judicial district, and a substantial part of the events giving rise to this claim occurred in this judicial district.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

5.     Mr. Rindos commenced employment with Partners Group in or around January 2010 and at the time of his unlawful termination held the title of Global Co-Head of the Structuring Solutions business unit.

6.     Mr. Rindos also held the positions of Deputy Office Head of the New York office and Chief Financial Officer of Partners Group Private Equity (Master Fund), LLC (the "40 Act Fund").

7.     In these positions, Mr. Rindos was a strong performer and did not receive any write-ups, disciplinary action or significant documented performance issues during his employment.

8.     On the contrary, Mr. Rindos consistently received extremely positive reviews of his work performance by both his peers and his superiors for over ten years.

9.     In or around July 2021, Mr. Rindos was diagnosed with general anxiety and depression by his treating physician, Dr. Michael Cunningham.  These diagnoses were ultimately shared with members of the Company's upper management and Human Resources Department.

10.     Shortly thereafter, on December 19, 2021, Mr. Rindos was arrested in connection with an incident that occurred in his home and subsequently charged with third-degree Aggravated Assault.  At the time, Mr. Rindos was struggling with alcoholism and was heavily intoxicated during this incident.

11.     On or about December 28, 2021, Mr. Rindos reached out to Robert Cagnati, Partner, member of the Company's Executive Team, Chief Risk Officer and Head of Portfolio Solutions, as well as Kirsta Anderson, Partner, member of the Company's Executive Team and the Company's Chief People Officer, regarding the fact that he was seeking inpatient treatment for his own mental health.

12.     Mr. Rindos requested an approximate one (1) month leave from January 4, 2022 until January 30, 2022.

13.     In response to this request, the Company forwarded Mr. Rindos FMLA leave request forms, which were ultimately completed by Caron Treatment Centers, the inpatient treatment facility where Mr. Rindos was set to complete treatment.  In these forms, Caron Treatment Centers made clear that this request for leave was due to Mr. Rindos' diagnosis of alcohol use disorder.

14.     On or about January 19, 2022, Mr. Rindos reached out to both Mr. Cagnati and Tobias Giesser, Managing Director and Global Co-Head of Structuring Solutions, to let them know that at that time, he planned on returning to work on February 1, 2022.  Mr. Rindos received a text from Mr. Cagnati on January 20, 2022 indicating that this was not a problem and that he hoped Mr. Rindos was doing well.

15.     On January 23, 2022, a mere three (3) days later, Mr. Rindos received a call from Mr. Cagnati while in inpatient treatment at Caron Treatment Centers, who stated that it

had been brought to the Company's attention that Mr. Rindos was arrested in December of 2021. In response, Mr. Rindos admitted that he was arrested and explained that it was an alcohol related incident that resulted in the facts outlined in the arrest report.

16.     That same day, January 23, 2022, Rob Collins, Partner, Head of the Company's New York office and President and board member of the 40 Act Fund, reached out to Mr. Rindos to inform him that the Company was made aware of the arrest when an employee of Partners Group's Structuring Solutions business unit brought it to their attention.

17.     During this call, Mr. Collins indicated that Dave Layton, Chief Executive Officer of the Company, had contacted Mr. Collins to inquire about the incident. Mr. Collins noted that he had expressed to Mr. Layton that Mr. Rindos was "one of the most valued employees at the Company and that the Company should approach the situation in a highly supportive manner."

18.     Mr. Collins explained that Mr. Layton stated that "this was the correct approach." Additionally, Mr. Rindos informed Mr. Collins that he was at Caron Treatment Centers due to his alcoholism and would return to work when possible. Finally, Mr. Collins indicated that upon the request of the Company, he was in discussions with Mr. Joshua Deringer, Esq., counsel to the 40 Act Fund, to determine the consequences of the arrest for both the Company and the 40 Act Fund.

19.     On January 26, 2022, Mr. Collins explained to Mr. Rindos that Mr. Deringer confirmed that there was no requirement that the Company fire him and that everything would remain status quo for the time being.

20.     Mr. Collins explained that "the arrest was completely irrelevant to the 40 Act Fund as it did not have a material impact on the Company's ability to manage the 40 Act Fund."

Mr. Collins further explained to Mr. Rindos that Mr. Deringer recommended that Mr. Rindos'

medical leave was not an issue, that the topic be discussed with the board of the 40 Act Fund

in executive session and that he remain the CFO of the 40 Act Fund pending his return from

medical leave.

21.     On or about January 28, 2022, while Mr. Rindos was still undergoing inpatient

treatment at Caron Treatment Centers, Mr. Rindos had a conversation with the Company's

European Regional Head of HR, Amanda Evans, and Lauren Zierolf of the Company's HR

business unit.

22.     During this conversation, Mr. Rindos walked Evans and Zierolf through his

history of alcoholism and mental health issues since July 2021 and contributing factors,

including his mother's terminal illness which the Company was aware of, and other

employment related matters which members of the Executive Team were similarly aware, as

well as discussed the circumstances surrounding his arrest.

23.     Mr. Rindos indicated that his arrest and subsequent charges were the result of an

alcohol related incident which were likely to be resolved in a manner that would not result in a

criminal conviction.

24.     Additionally, Mr. Rindos provided a detailed explanation of the treatment he

was currently undergoing at Caron Treatment Centers as well as the on-going outpatient

treatment which was to continue post-discharge.

25.     Then, on or about January 31, 2022, Mr. Rindos made a request for an extension

of his medical leave due to his own mental health.  This request was also made due to his need

to attend daily therapy related to his Post Traumatic Stress Disorder (PTSD) diagnosis.

26.     In response, Lauren Zierolf emailed Mr. Rindos granting his request for an additional six (6) month medical leave and indicating that part of this leave would be designated as FMLA leave.

27.     From approximately early February until May of 2022, Mr. Rindos and the Company had very little, if any, communication.

28.     On May 11, 2022, Mr. Rindos resolved his pending criminal matter via acceptance into New Jersey's Pre-Trial Intervention (PTI) program, which notably does not result in a criminal conviction.  In fact, if Mr. Rindos satisfactorily completes the PTI program, the charges pending against him are dismissed.

29.     Mr. Rindos' criminal defense attorney notified the Company's corporate counsel, Lisa Lyle, on the same day as to the resolution of Mr. Rindos' pending criminal matter.

30.     Shortly after Mr. Rindos' acceptance into this program, he received an email from Nicole Meade, Regional Head of the Company's Human Resources business unit, asking to schedule a meeting with her and Roberto Cagnati the week of May 16, 2022 New York to discuss "perspective on Mr. Rindos' points of view."

31.     When Mr. Rindos attended this meeting on May 19th, he was asked to provide "his side of the story" from the incident in December.  In response, Mr. Rindos shared information regarding the incident and the fact that he was accepted into the PTI program, which would not result in a criminal conviction.  He also brought up his concerns about his own privacy and legal protections he was afforded under the Fair Chance Act.

32.     At no point in time was there any interest by Ms. Meade or Mr. Cagnati into the rehabilitation undertaken to date by Mr. Rindos nor plans for the future.

33.     Mr. Cagnati then proceeded to state that he had no choice but to separate the employment relationship with Mr. Rindos.

34.     Rather than properly address Mr. Rindos' concerns about Partner Group's potential violation of the law, Ms. Meade read a prepared statement and summarily terminated Mr. Rindos' employment with the Company.

35.     Mr. Rindos asked both Ms. Meade and Mr. Cagnati whether there was any other additional information he could have shared during this meeting that would have not resulted in termination, to which each responded "No."

36.     Several hours after the zoom meeting, Mr. Rindos was provided with a letter informing him of his termination and the Company's reasoning behind it.

37.     In particular, Partners Group cited Section 6.2 of its Company Handbook, which they claimed required Mr. Rindos to disclose his arrest within seven (7) days of its occurrence.

38.     Furthermore, the Company claimed that it considered the factors required by Article 23-A of the New York State Correction Law, including their interest in protecting the safety and welfare of other employees, as well as the offense's relation to Mr. Rindos' ability to perform the duties of his job.

39.     Partners Group did not conduct any analysis of the connection between Mr. Rindos' alleged conduct and the nature of his position with the Company.  Had they done so, they would come to the inevitable conclusion that there is absolutely no connection between an isolated, alcohol induced incident inside his home and Mr. Rindos' role as the Global Co-Head of the Structuring Solutions business unit.

40.     It is likewise apparent that Partners Group did not consider the factors outlined under Article 23-A, particularly information provided by Mr. Rindos regarding his rehabilitation.

41.     Further, given Mr. Rindos' extensive rehabilitation, there is simply no risk to any people or property at Partners Group that would warrant termination, let alone an unreasonable risk.

42.     Finally, Partners Group also violated the Fair Chance Act ("FCA") by failing to disclose a written copy of the inquiry they conducted into Mr. Rindos' criminal history, as well as failing to share with Mr. Rindos a written copy of their complete Fair Chance analysis under Article 23-A.

<u>**FIRST COUNT**</u>

**Violation of the New York City Human Rights Law**
**Disability/Perceived Disability Discrimination/Failure to Accommodate**

43.     Plaintiff repeats and realleges each and every allegation of the within paragraphs of this Complaint as if set forth at length herein.

44.     Plaintiff suffered from recognized disabilities under the New York City Human Rights Law in that he suffered from alcoholism, PTSD, anxiety and depression, requiring medical treatment and accommodation, including but not limited to a medical leave.

45.     Defendants violated the New York City Human Rights Law, 8 NYC Admin. Code § 8-101, *et seq.*, by discriminating against Plaintiff based on his disability and/or perceived disability.

46.     In addition, Defendants further violated the New York City Human Rights Law, 8 NYC Admin. Code § 8-101, *et seq.*, by failing to provide Plaintiff with any reasonable accommodation for his disability.

47.    Finally, Defendants further violated the New York City Human Rights Law, 8 NYC Admin. Code § 8-101, *et seq.*, by failing to engage in the interactive process to determine whether they could provide Plaintiff with a reasonable accommodation for his disability.

48.    As a direct result of Defendants' violations of the New York City Human Rights Law, 8 NYC Admin. Code § 8-101, *et seq.*, Plaintiff continues to endure significant damages including, but not limited to, physical and bodily injuries, reduced healthcare due to lack of medical benefits, severe emotional distress, humiliation, embarrassment, anguish, personal hardship, career and social disruption, psychological and emotional harm, economic losses, lost employment opportunities, and other such damages.

WHEREFORE, plaintiff, Justin Rindos, demands judgment against defendants, PARTNERS GROUP (USA), INC.; Jane Doe I-V (these names being fictitious as their present identities are unknown); John Doe I-V (these names being fictitious as their present identities are unknown); XYZ Corporation I-V (these names being fictitious as their present identities are unknown), jointly and severally, for harm suffered as a result of defendants' disability/perceived disability discrimination as follows:

(a)    full compensation for back pay and benefits with full remuneration, with interest;

(b)    full compensation for front pay and benefits with full remuneration, with interest;

(c)    compensatory damages;

(d)    consequential damages;

(e)    punitive damages;

(f)    pre-judgment interest;

(g)     his attorneys' fees and costs with appropriate enhancement;

(h)     such other relief as may be available and which this court deems to be just and equitable.

## SECOND COUNT

**Violation of the New York State Human Rights Law**
**Disability/Perceived Disability Discrimination/Failure to Accommodate**

49.     Plaintiff repeats and realleges each and every allegation of the within paragraphs of this Complaint as if set forth at length herein.

50.     Plaintiff suffered from recognized disabilities under the New York State Human Rights Law in that he suffered from alcoholism, anxiety and depression, requiring medical treatment and accommodation, including but not limited to a medical leave.

51.     Defendants violated the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.*, by discriminating against Plaintiff based on his disability and/or perceived disability.

52.     In addition, Defendants further violated the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.*, by failing to provide Plaintiff with any reasonable accommodation for his disability.

53.     Finally, Defendants further violated the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.*, by failing to engage in the interactive process to determine whether they could provide Plaintiff with a reasonable accommodation for his disability.

54.     As a direct result of Defendants' violations of the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.*, Plaintiff continues to endure significant damages including, but not limited to, physical and bodily injuries, reduced healthcare due to lack of medical benefits, severe emotional distress, humiliation, embarrassment, anguish, personal hardship,

career and social disruption, psychological and emotional harm, economic losses, lost employment opportunities, and other such damages.

WHEREFORE, plaintiff, Justin Rindos, demands judgment against defendants, PARTNERS GROUP (USA), INC.; Jane Doe I-V (these names being fictitious as their present identities are unknown); John Doe I-V (these names being fictitious as their present identities are unknown); XYZ Corporation I-V (these names being fictitious as their present identities are unknown), jointly and severally, for harm suffered as a result of defendants' disability/perceived disability discrimination as follows:

(a)     full compensation for back pay and benefits with full remuneration, with interest;

(b)     full compensation for front pay and benefits with full remuneration, with interest;

(c)     compensatory damages;

(d)     consequential damages;

(e)     punitive damages;

(f)     pre-judgment interest;

(g)     his attorneys' fees and costs with appropriate enhancement;

(h)     such other relief as may be available and which this court deems to be just and equitable.

## THIRD COUNT

### Violation of the New York City Human Rights Law
### Fair Chance Act

55.     Plaintiff repeats and realleges each and every allegation of the within paragraphs of this Complaint as if set forth at length herein.

56.      Defendants violated the New York City Human Rights Law Fair Chance Act by discriminating against Plaintiff due to his involvement with the criminal justice system.

57.      Defendants further violated the New York City Human Rights Law Fair Chance Act by terminating Plaintiff's employment on the basis of a non-conviction, a *per se* violation of the Act.

58.      In addition, Defendants further violated the New York City Human Rights Law by failing to conduct a complete and thorough Fair Chance Analysis.

59.      As a direct result of Defendants' violations of the New York City Human Rights Law Fair Chance Act, Plaintiff continues to endure significant damages including, but not limited to, physical and bodily injuries, reduced healthcare due to lack of medical benefits, severe emotional distress, humiliation, embarrassment, anguish, personal hardship, career and social disruption, psychological and emotional harm, economic losses, lost employment opportunities, and other such damages.

WHEREFORE, plaintiff, Justin Rindos, demands judgment against defendants, PARTNERS GROUP (USA), INC.; Jane Doe I-V (these names being fictitious as their present identities are unknown); John Doe I-V (these names being fictitious as their present identities are unknown); XYZ Corporation I-V (these names being fictitious as their present identities are unknown), jointly and severally, for harm suffered as a result of defendants' violation of the Fair Chance Act as follows:

(a)      full compensation for back pay and benefits with full remuneration, with interest;

(b)      full compensation for front pay and benefits with full remuneration, with interest;

12

(c)     compensatory damages;

(d)     consequential damages;

(e)     punitive damages;

(f)     pre-judgment interest;

(g)     his attorneys' fees and costs with appropriate enhancement;

(h)     such other relief as may be available and which this court deems to be just and equitable.

## FOURTH COUNT

### Violation of the Family and Medical Leave Act

60.     Plaintiff repeats and realleges each and every allegation of the within paragraphs of this Complaint as if set forth at length herein.

61.     The Family and Medical Leave Act ("FMLA") requires employers to grant eligible employees up to twelve weeks job-protected unpaid leave for, among other things, their own serious health condition.

62.     The FMLA further requires that an employer reinstate eligible employees following FMLA leave to their prior position and/or a comparable position.

63.     Defendant is a covered employer under the FMLA.

64.     Plaintiff was placed on and/or should have been placed on protected leave and had a right to exercise his rights under the statute without interference and/or retaliation by Defendant and its management.

65.     Plaintiff also had a right to reinstatement to his prior position following any protected leave time.

66.    Defendants violated the FMLA by retaliating against plaintiff for his attempted and/or actual exercise of rights under the Act.

WHEREFORE, plaintiff, Justin Rindos, demands judgment against defendants, PARTNERS GROUP (USA), INC.; JANE DOE I-V (these names being fictitious as their present identities are unknown); JOHN DOE I-V (these names being fictitious as their present identities are unknown); XYZ CORPORATION I-V (these names being fictitious as their present identities are unknown), jointly and severally, for harm suffered as a result of defendants' violation of the FMLA as follows:

(a)    full compensation for back pay and benefits with full remuneration, with interest;

(b)    full compensation for front pay and benefits with full remuneration, with interest;

(c)    compensatory damages;

(d)    consequential damages;

(e)    liquidated and/or punitive damages under the FMLA;

(f)    attorneys' fees and costs with appropriate enhancement;

(g)    and such other relief as may be available pursuant to the FMLA and which this court deems to be just and equitable.

O'CONNOR, PARSONS, LANE & NOBLE, LLC
Attorneys for Plaintiff

By:__/s/ Gregory Noble_____

Dated: August 8, 2022                    GREGORY B. NOBLE

14

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues.

O'CONNOR, PARSONS, LANE & NOBLE, LLC
Attorneys for Plaintiff


By:__/s/ Gregory Noble_____
GREGORY B. NOBLE

DATED:  August 23, 2022


## DESIGNATION OF TRIAL COUNSEL

Please take notice that pursuant to Rule 4:25-4, Gregory B. Noble, Esq. is hereby

designated as trial counsel in the within matter.

O'CONNOR, PARSONS, LANE & NOBLE, LLC
Attorneys for Plaintiff


By:_/s/ Gregory Noble_____
GREGORY B. NOBLE

DATED:  August 23, 2022

15