UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUSTIN RINDOS,<br><br>          Plaintiff,<br><br>v.<br><br>PARTNERS GROUP (USA), INC.,<br><br>          Defendant. | Civ. No. 2:22-CV-05187 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.**

      This matter arises out of the termination of plaintiff Justin Rindos' ("Plaintiff" or "Rindos") employment with Partners Group USA, Inc. ("Defendant" or "Partners Group") following Plaintiff's failure to report his arrest. Before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(6). ECF No. 6. For the reasons set forth below, Defendant's motion is **GRANTED** in part and **DENIED** in part.

      **I.    BACKGROUND**[1]

      Plaintiff began his employment with Defendant around January 2010 and, at the time of his termination, held the title of Global Co-Head of the Structuring Solutions business unit as well as Chief Financial Officer of Partners Group Private Equity (Master Fund), LLC (the "40 Act Fund"). Compl. ¶¶ 5-6, ECF No. 1. During Plaintiff's employment, he did not receive any disciplinary actions or documented performance issues. *Id.* at ¶ 7. Around July 2021, Plaintiff was diagnosed with general anxiety and depression, which upper management at Partners Group ultimately became aware of. *Id.* at ¶ 9. On December 19, 2021, Plaintiff was arrested and charged with second-degree aggravated assault[2]. *Id.* at ¶ 10. Plaintiff's arrest

---

[1] This Opinion draws its facts from the Complaint, ECF No. 1, the well-pleaded allegations of which are taken as true on this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, the Court considers the exhibits attached to the Certification of Paul C. Evans in support of Defendant's motion to dismiss ("Evans Cert." (ECF No. 6-2)), which are incorporated by reference in the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[2] The Court looks outside of the pleadings and to Defendant's attachment of the Plaintiff's arrest record. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d, 357, 368 n.9 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (Internal quotations omitted). Although Plaintiff alleges he was charged with third-degree assault,

record shows that he strangled his wife by placing both hands onto her throat, obstructing her breathing and blood circulation. *See* Def. Ex. A. Plaintiff allegedly then repeated this action a second time before his wife left the house and called the police. *Id.* Plaintiff alleges that, at the time, he was struggling with alcoholism and was heavily intoxicated during this assault. Compl. ¶ 10.

On December 28, 2021, Plaintiff reached out to members of Partner Group's executive team regarding his decision to seek inpatient treatment for mental health. *Id.* at ¶ 11. Plaintiff requested approximately a one month leave from January 4, 2022, until January 30, 2022 due to his alcohol use disorder. *Id.* at ¶¶ 12- 13. On January 19, 2022, Plaintiff reached out to members of Partner Group's executive team to inform them he planned to return to work on February 1, 2022. *Id.* at ¶ 14. On January 23, 2022, Plaintiff received a call from Robert Cagnati, who is a Partner, Chief Risk Officer, and the Head of Portfolio Solutions at Partners Group. *Id.* at ¶ 15. Mr. Cagnati stated that it had been brought to Partner Group's attention that Plaintiff was arrested in December of 2021.[3] *Id.* In response Plaintiff admitted he was arrested and explained that it was an alcohol related incident. *Id.* Plaintiff alleges he was informed by Rob Collins, head of Partners Group's New York office and president of the 40 Act Fund, that he was in discussions with Joshua Deringer, counsel to the 40 Act Fund, to determine the consequences of the arrest for both Partners Group and the 40 Act Fund. *Id.* at ¶ 18. On January 26, 2022, Mr. Collins explained to Plaintiff that Mr. Deringer confirmed there was no requirement that the company fire him. *Id.* at ¶ 19. Mr. Collins also allegedly told Plaintiff that "the arrest was completely irrelevant to the 40 Act Fund as it did not have a material impact on the Company's ability to manage the 40 Act Fund." *Id.* at ¶ 20.

On January 28, 2022, Plaintiff spoke with Defendant's European Regional Head of human resources, Amanda Evans, and Defendant's human resources business unit, Lauren Zierolf. *Id.* at ¶ 21. Plaintiff walked Ms. Zierolf and Ms. Evans through his history of alcoholism and mental health issues and indicated that his arrest and subsequent charges were the result of an "alcohol related incident" likely to be resolved in a non-criminal conviction. *Id.* at ¶¶ 22-23. On January 31, 2022, Plaintiff requested an extension for his medical leave, which was granted under the Family and Medical Leave Act ("FMLA") for an additional six months. *Id.* at ¶¶ 25-26. Four months later, on May 11, 2022, Plaintiff was accepted into New Jersey's Pre-Trial Intervention program, which would dismiss the charges pending against him if he successfully completes the program. *Id.* at 28. On May 19, 2022, Plaintiff met with Nicole Meade, Regional Head of the Defendant's human resources business unit, and Mr. Cagnati where they further discussed Plaintiff's domestic violence and subsequent arrest. *Id.* at ¶¶ 30-31. At the end of the meeting, Ms. Meade and Mr. Cagnati terminated Plaintiff's employment with the Defendant. *Id.* at ¶ 34. Plaintiff allegedly asked Ms. Meade and Mr. Cagnati whether there was any other additional information he could have provided that would have not resulted in his termination, to which they responded "no." *Id.* at ¶ 35. Plaintiff

---

Compl. ¶ 10, the arrest record clearly indicates he was charged in violation of 2C:12-1B (12), a crime in the second degree.

[3] It is unclear exactly how Defendant was made aware of Plaintiff's arrest, however, it is undisputed that Plaintiff did not inform Defendant until he was confronted nearly a month after the arrest.

was later provided with a letter detailing his termination, which explained that he violated Section 6.2 of the Company Handbook that required employees to disclose any arrests within seven days of its occurrence. *Id.* at ¶ 37. The letter states Defendant considered the factors required by Article 23-A of the New York State Correction Law, including its interest in protecting the safety and welfare of other employees and the offense's relation to Plaintiff's ability to perform the duties of his job. *Id.* at ¶ 38. In the letter, Plaintiff is given eight days to provide Defendant any additional information he would like them to consider before finalizing his termination.

## II. PROCEDURAL HISTORY

Plaintiff filed his four-count complaint against Defendant on August 24, 2022. ECF No. 1. Count One alleges Defendant violated the New York City Human Rights Law ("NYCHRL"), N.Y. City. Admin. Code § 8-101-8-131, by discriminating against him based on his disability or perceived disability. Compl. ¶ 45. Specifically, Plaintiff alleges Defendant failed to provide him with any reasonable accommodation for his disability and failed to "engaged in the interactive process to determine whether they could provide him with a reasonable accommodation." *Id.* at ¶¶ 46-47. Count Two alleges Defendant violated the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law. §§ 290-301, by similarly discriminating against Plaintiff based on his disability and failing to provide a reasonable accommodation. *Id.* at ¶¶ 51-52. Count Three alleges Defendant violated the NYCHRL Fair Chance Act ("FCA") by discriminating against Plaintiff due to his involvement with the criminal justice system and terminating his employment on the basis of a non-conviction. *Id.* at ¶¶ 56-57. Finally, Count Four alleges Defendant violated the Family and Medical Leave Act, 29 USCS, Ch. 28, by failing to place Plaintiff on protected leave and reinstating him to his prior position following any protected leave time. *Id.* at ¶¶ 62-66.

Defendant filed its motion to dismiss on October 31, 2022, ECF No. 6. Plaintiff filed his response on December 2, 2022, ECF No. 9, and Defendant filed its reply on December 12, 2022. ECF No. 10. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) based on the diverse citizenship of the parties and an amount in controversy exceeding $75,000.[4]

## III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The movant bears the burden of showing that no claim has been stated. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under FRCP 12(b)(6), "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The Court need not accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[4] Defendant is a company with its principal place of business in New York and Plaintiff is a citizen of New Jersey. Compl. ¶¶ 2-3.

678 (2009). In ruling on a 12(b)(6) motion, the Court is ordinarily limited to the facts as alleged in the complaint, the exhibits attached thereto, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1996 (3d Cir. 1993). The Court may, however, look outside the pleadings and also consider "document[s] integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Asbestos Prod. Liability Litig.* (No. VI), 822 F.3d 125, 134 n.7 (3d Cir. 2016).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## IV. DISCUSSION

### A. NYSHRL and NYCHRL Disability Discrimination and Failure to Accommodate

Counts I and II allege Defendant discriminated against Plaintiff based on his alcoholism disability[5] and failed to provide him any reasonable accommodation. Def. Mot. at 11-12. Specifically, Defendant claims the complaint is devoid of facts that suggest Defendant terminated Plaintiff due to his disability and the two accommodations Plaintiff requested was granted.[6] *Id.* at 12-14. On the other hand, Plaintiff in its opposition argues that while Defendant did initially grant Plaintiff medical leave, "they prevented him from completing his leave and returning to work, thereby failing to accommodate his disability." Pl. Opp. at 10. Furthermore, Plaintiff argues it can be easily inferred that he was terminated due to his disability and not on his arrest alone because Defendant learned of his arrest in January 2021 and assured him it was not a problem.

Section 8-107(1)(a) of the NYCHRL prohibits employment discrimination based on an "actual or perceived . . . disability." N.Y.C. Admin. Code § 8-107(1)(a). The statute defines "disability" as "any physical, medical, mental or psychological impairment, or a history or record of such impairment." *Id.* § 8-102(16)(a). "In the case of alcoholism," however, the

---

[5] Any discrimination claims based on the disability of anxiety and depression will not be considered as Plaintiff's complaint makes clear that he informed Defendant of such disability in July of 2021 and has not alleged any plausible inference that he was discriminated on that basis.

[6] Defendant also argues that Plaintiff's claims should be dismissed because Partners Group terminated Plaintiff "based on a legitimate, non-discriminatory reason." (Defs.' Mem. 11.) While this is a relevant consideration on a motion for summary judgment, it is not one that the Court considers at the motion to dismiss stage. *Cf. McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (noting that at the summary judgment stage, a "plaintiff must establish a prima facie case; the employer must offer . . . a legitimate non-discriminatory reason for the discharge; and the plaintiff must then . . . carry the burden of persuasion that the proffered reason is a pretext.")

4

NYCHRL narrows the definition of "disability" so that it "shall only apply to a person who (1) is recovering or has recovered and (2) currently is free of such abuse." *Id.* § 8-102(16)(c). Historically, discrimination claims under the NYSHRL were "largely subject to the same analysis [courts] apply under Title VII." *Reyes v. Westchester County Health Care Corp.*, No. 21-cv-0410, 2021 WL 4944285, at *2 (2d Cir. Oct. 25, 2021) (citing *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014)); *see Williams v. MTA Bus Co.*, No. 17-cv-7687, 2020 WL 1922911, at *5 (S.D.N.Y. Apr. 20, 2020) (same). However, in June of 2019, New York State amended the NYSHRL, "the effect of which is to render the standard for claims [brought under the NYSHRL] closer to the standard under the NYCHRL." *Wellner v. Montefiore Med. Ctr.*, No. 17-cv-3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019); *DeAngelo v. MAXIMUS/NY Medicaid Choice*, No. 19-cv-7957, 2022 WL 3043665, at *12 n.15 (S.D.N.Y. Aug. 2, 2022) (discussing the more liberal post-amendment standard under the NYSHRL); As to the NYCHRL, "courts must construe the NYCHRL 'liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'" *Harris v. N.Y.C. Hum. Res. Admin.*, No. 20-cv-2011, 2022 WL 3100663, at *8 (S.D.N.Y. Aug. 4, 2022) (quoting *Leroy v. Delta Airlines, Inc.*, 36 F.4th 469, 474 (2d Cir. 2022)). "To state a prima facie case of disability discrimination under the . . . NYSHRL, or NYCHRL, a plaintiff must show: (1) the employer is subject to the . . . NYSHRL, or NYCHRL; (2) he suffers from a disability within the meaning of the . . . NYSHRL, or NYCHRL; (3) he is otherwise qualified to perform his job; and (4) he suffered an adverse employment decision because of his disability." *Brown v. The Pension Bds.*, 488 F. Supp. 2d 395, 405-06 (S.D.N.Y. 2007) (collecting cases). "To prevail on an NYCHRL discrimination claim, 'the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason.'" *Reed v. Nike, Inc.*, No. 17 Civ. 7575, 2019 WL 2327519, at *1 (S.D.N.Y. May 31, 2019) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013)).

Here, Plaintiff's conclusory allegations are insufficient to state a claim upon which relief can be granted. Plaintiff argues that the Court can "easily infer that Plaintiff was terminated due to his disability and not on his arrest alone based on the fact that defendants learned of his arrest in January 2021 and assured him it was not a problem." Pl. Opp. at 10. The Court disagrees. Plaintiff points to no plausible evidence connecting his disability and his termination other than the mere fact Defendant was aware of his disability. The alleged statement assuring Plaintiff that his arrest was "not a problem" addresses the arrest itself and not the failure to disclose it as required by company policy. Compl. ¶¶ 19-20. The connection between Plaintiff's disability and his alleged discrimination is too attenuated. In fact, while aware of his disability, Defendant granted Plaintiff medical leave twice before terminating his employment nearly five months later. Furthermore, Defendant first became aware of Plaintiff's disability regarding alcoholism when he completed and submitted his inpatient treatment forms sometime between December 28, 2021, and January 4, 2022. Compl. ¶¶ 11-13. Defendant became aware of Plaintiff's arrest, and his failure to disclose it, on January 23, 2022. *Id.* at ¶ 15. Defendant's termination letter to Plaintiff makes it clear that he was terminated for his failure to disclose his arrest, as required by company policy. Def. Mot. Ex. B.

To assert an NYSHRL accommodation claim, "an employee must show that: (1) he is a person with a disability under the meaning of the [Americans with Disabilities Act]; (2) an

employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [the employee] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (internal quotation marks and citation omitted). "The NYCHRL similarly 'requires that an employer make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job provided that the disability is known or should have been known by the employer.'" *Lazzari v. New York City Dep't of Parks & Recreation*, 751 F. App'x 100, 102 (2d Cir. 2018) (quoting *Romanello v. Intesa Sanpaolo, S.p.A.*, 22 N.Y.3d 881, 998 (N.Y. 2013)) (internal quotation marks, citation, and alteration omitted). The elements to establish disability discrimination under the NYSHRL and NYCHRL "generally track the ADA." *Thomson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *18 (E.D.N.Y. Sept. 21, 2015), aff'd, 652 F. App'x 44 (2d Cir. 2016). "However, the NYSHRL provides broader protection than the ADA, and the NYCHRL is broader still." Here, Plaintiff alleges his second request for an additional six-month medical leave, which was designated as FMLA leave, was cut short due to his termination. As a result, Plaintiff alleges Defendant failed to accommodate his disability but preventing him from completing his leave and returning to work. However, "FMLA leave is not a reasonable accommodation under the ADA, but rather 'a right enforceable under a separate statutory provision.'" *Peterson v. N.Y.C. Dep't of Educ.*, No. 18-CV-1515, 2020 U.S. Dist. LEXIS 88964, at *13 (E.D.N.Y. May 20, 2020) (quoting *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017). "An employee seeking FMLA leave is by nature arguing that he cannot perform the functions of the job, while an employee requesting a reasonable accommodation communicates that he can perform the essential functions of the job." *Acker*, 854 F.3d 784 at 792; *see also Navarro v. Pfizer Corp.*, 261 F.3d 90, 101 (1st Cir. 2001) (noting that the "ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief"). Plaintiff's claim regarding reasonable accommodation under the NYCHRL and NYSHRL as to his FMLA leave fails to state a claim upon which relief can be granted. Therefore, Plaintiff's claims for disability discrimination under Counts I and II are **DISMISSED** without prejudice.

### B. NYCHRL Fair Chance Act

Under Count III, Plaintiff alleges Defendant violated the FCA by: (1) discriminating against him due to his involvement with the criminal justice system; (2) terminating his employment on the basis of a non-conviction; (3) and failing to conduct a complete and thorough Fair Chance analysis. Compl. ¶¶ 56-58. In his opposition to the instant motion, Plaintiff argues that Defendant committed a per se violation of the FCA by "failing to disclose a written copy of the inquiry they conducted into Mr. Rindos' criminal history and failing to share a written copy of their complete Fair Chance analysis." Pl. Opp. at 12. Defendant argues it did not violate the FCA since Plaintiff was terminated for having made intentional misrepresentations regarding his arrest, which he was required to disclose per company policy.

The FCA, which went into effect on October 27, 2015, amended the NYCHRL to provide additional protection from employment discrimination to individuals with criminal histories. *See* N.Y.C. Local Law 63 (2015). In relevant part, the FCA states

> "[i]t shall be an unlawful discriminatory practice for any employer... to take adverse action against any... employee based on an arrest or criminal accusation that is pending... unless, after considering the relevant fair chance factors, the employer determines that either (i) there is a direct relationship between the alleged wrongdoing that is the subject of the pending arrest or criminal accusation and the employment sought or held by the person; or (ii) the granting or continuation of the employment would involve and unreasonable risk to property or to the safety or welfare of specific individuals or the general public."

NYC Administrative Code 8-107, § 10(e). The FCA goes on to carve out an exception allowing employers to take such adverse actions against an employee "who is found to have made intentional misrepresentations regarding their arrest or conviction history, provided that such adverse action is not based on a failure to divulge information that a person may not be required to divulge..." *Id.* at § 10(g).

Affording Plaintiff favorable factual inferences, Plaintiff was nonetheless required to disclose his arrest within seven days, as required by company policy, and failed to do so. *See* Evans Cert. Ex. C, Excerpts from Company Handbook at § 6.2 ("If you are arrested for a misdemeanor or felony while employed by the Company, you must report the arrest to your supervisor or human resources within seven days after the arrest." Plaintiff was arrested on December 19, 2021, and spoke to his employers on December 28, 2021, but only to request a one month leave for mental health inpatient treatment. Plaintiff does not contest that he did not disclose his arrest. In fact, Plaintiff concedes that Defendant initiated the conversation with him regarding his arrest. Compl. ¶ 15 ("On January 23, 2022... [Plaintiff] received a call from Mr. Cagnati... who stated it had been brought to the Company's attention that Mr. Rindos was arrested in December of 2021.") Despite Defendant taking clear adverse action against plaintiff, i.e., terminating his employment, Defendant's actions nonetheless fall squarely under § 10(g) since Plaintiff failed to disclose his arrest. Furthermore, Defendant provided Plaintiff with a written letter detailing his termination, outlining the Article 23-A factors considered, and affording Plaintiff an opportunity to provide additional information before his termination was to be finalized. *See* Evans Cert. Ex. B. Therefore, Plaintiff's claim for FCA violations under Count III is **DISMISSED** without prejudice.

### C. FMLA

Under Count IV, Plaintiff alleges he was protected under the FMLA, had a right to be reinstated to his prior position following his leave, and Defendant violated the FMLA by retaliating against Plaintiff for his attempted exercise of these rights. Compl. ¶¶ 60-66. It is undisputed that Plaintiff was granted six months of leave on January 31, 2022 but was terminated prior to the completion of his leave on May 26, 2022. "[T]o prevail on a claim of interference with her FMLA rights, a plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

Plaintiff has clearly and adequately pleaded that he was entitled to FMLA leave, that he requested this leave, and that although Defendant initially granted his request, Defendant prematurely ended his leave by terminating him. This is sufficient to make out a claim for FMLA interference. Therefore, Defendant's motion to dismiss Count IV with respect to FMLA interference is **DENIED**.

However, with respect to FMLA retaliation, Plaintiff's allegations do not pass muster. In order to state a claim of retaliation under the FMLA, Plaintiff must show: (1) an invocation of a right to FMLA leave, (2) and adverse employment action, and (3) a casual link between the two. *See Caplan v. L Brands/Victoria's Secret Stores*, 704 F. App'x 152, 155 (3d Cir. 2017). Although Plaintiff has adequately pleaded the first two factors, his claim fails on the third. Evidence of temporal proximity, without more, from when the Plaintiff invoked his right to the adverse action is insufficient to demonstrate a casual link unless it is "unusually suggestive" of retaliatory motive. *Id.* Plaintiff has failed to plead facts sufficient to demonstrate FMLA retaliation. Therefore, Defendant's motion to dismiss Count IV with respect to FMLA retaliation is **GRANTED**.

## V.   CONCLUSION

For the reasons set forth above, Defendant's motion is **GRANTED** in part and **DENIED** in part. An appropriate Order shall follow.

_____
WILLIAM J. MARTINI, U.S.D.J.

**Date: March 21, 2023**