UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JUSTIN RINDOS,

       Plaintiff,

v.

PARTNERS GROUP (USA), INC.; JANE
DOE I-V (these names being fictitious as
their present identities are unknown); JOHN
DOE I-V (these names being fictitious as
their present identities are unknown); XYZ
CORPORATION I-V (these names being
fictitious as their present identities are
unknown)

       Defendants.

Civil Action No. 2:22-cv-05187

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S NOTICE OF MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT**

---

O'CONNOR , PARSONS, LANE & NOBLE, LLC
Gregory B. Noble, Esq. (#017601998)
Robert A. Ballard, III, Esq. (#087192014)
959 South Springfield Avenue, 2nd Floor
Springfield, New Jersey 07081
Phone: 908-928-9200
Attorneys for Plaintiff

1

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ........................................................................................2

LEGAL STANDARD................................................................................................8

ARGUMENT.............................................................................................................10

    I.    PLAINTIFF HAS PLED SUFFICIENT FACTS
         TO SUPPORT CLAIMS THAT DEFENDANT
         VIOLATED THE FAIR CHANCE ACT (COUNT III) .............................10

        A.  Plaintiff Plausibly Alleged that Defendant Failed to
           Conduct a Complete and Proper Fair Chance Analysis.........................10

        B.  Defendant Fails to Allege Any Facts Supporting
           the Conclusion that Plaintiff Intentionally Misrepresented
           his Arrest................................................................................................16

        C.  Plaintiff Plausibly Alleges a Discriminatory Motive
           Under his FCA Claim .............................................................................17

    II.    PLAINTIFF PLAUSIBLY ALLEGES DISCRIMINATION
         UNDER THE NYSHRL AND NYCHRL (COUNTS I AND II) ...............19

        A.  Plaintiff Plausibly Alleges Failure to Accommodate
           Under the NYSHRL and NYCHRL (Counts I and II)..........................22

    III.    PLAINTIFF HAD PLED SUFFICIENT FACTS TO
         SUPPORT A CLAIM THAT DEFENDANT VIOLATED
         THE FMLA (COUNT IV)........................................................................24

CONCLUSION ........................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

<u>**Case Law**</u>                                                                                                    <u>**Page**</u>

*Baron v. Adv. Asset & Prop. Mgmt. Solutions, LLC,*
    15 F. Supp. 3d 274 (EDNY 2014) ........................................................................20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................................8, 11

*Bennet v. Health Mgt. Sys., Inc.,*
    936 N.Y.S.2d 112 (1st Dept. App. Div. 2011) ....................................................19

*Bonacorsa v. Van Lindt,*
    71 NY2d 605 (1988) ...........................................................................................12

*Boykin v. KeyCorp,*
    521 F.3d 202 (2d Cir. 2008).................................................................................18

*Brown v. Pension Bds.,*
    488 F. Supp. 2d 395 (S.D.N.Y 2007) ................................................................20

*Budhun v. Reading Hosp. & Med. Ctr.,*
    765 F.3d 245 (3d Cir. 2014)................................................................................14

*Criado v. IBM Corp.,*
    145 F.3d 437 (1st Cir. 1998) ..............................................................................23

*Davis v. Wells Fargo,*
    824 F.3d 333 (3d Cir. 2016)............................................................................. 8, 9

*EEOC v. Port Auth. of N.Y. & N.J.,*
    768 F.3d 247 (2d Cir. 2014)................................................................................20

*Farmer v. Shack Enters., LLC,*
    473 F. Supp. 3d 309 (S.D.N.Y. 2020) ...............................................................20

*Farrell v. Planters Lifesavers Co.,*
    206 F.3d 271 (3d Cir.2000)................................................................................25

*Foglia v. Renal Ventures Mgmt., LLC,*
    754 F.3d 153, 154 n.1 (3d Cir. 2014 ....................................................................8

*Forde v. Beth Israel Med. Center,*
    546 F. Supp. 2d 142 (S.D.N.Y. 2008) ..................................................................8

*Forrest v. Jewish Guild for the Blind,*
    309 A.D.2d 546, N.Y.S.2d 326 (1st Dep't 2003) ..................................................9

### TABLE OF AUTHORITIES (CONT'D)

**Case Law**                                                                     **Page**

*Franklin v. Whole Foods Mkt. Grp., Inc.*,
  2022 WL 256460 (S.D.N.Y. Jan. 26, 2022) .........................................................12, 13, 18

*Godbolt v. Verizon New York Inc.*,
  2013 N.Y. Misc. LEXIS 219 (Sup. Ct. 2013) .....................................................17

*Graves v. Finch Pruyn & Co., Inc.*,
  457 F.3d 181 (2nd Cir. 2006)...........................................................................23

*Hansler v. Lehigh Valley Hosp. Network*,
  798 F.3d 149 (3d Cir. 2015) ............................................................................24

*James v. New York Racing Ass'n*,
  233 F.3d 149 (2nd Cir. 2000).............................................................................18

*Johnson v. Andy Frain Servs., Inc.*,
  638 F. App'x 68 U.S. App. LEXIS 784 WL 210098,18
  at *1 (2d Cir. Jan. 19, 2016)..............................................................................18

*Kamiel v. Hai St. Kitchen & Co. LLC*,
  2023 U.S. Dist. LEXIS 42026, (S.D.N.Y. Mar. 13, 2023) .................................21

*Kassner v. 2nd Ave. Delicatessen Inc.*,
  496 F.3d 229 (2d Cir.2007) ...............................................................................9

*Kaur v. New York City Health & Hosps. Corp.*,
  688 F.Supp.2d 317 (S.D.N.Y.2010) ...................................................................9

*LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*,
  503 F.3d 217 (3d Cir.2007) .............................................................................25

*Lee v. Song BMG Music Entm't, Inc.*,
  557 F. Supp. 2d 418 (S.D.N.Y. 2008) ...............................................................8

*Leibowitz v. Cornell Univ.*,
  584 F.3d 487 (2d Cir.2009)................................................................................9

*Littlejohn v. City of New York*,
  795 F.3d 297 (2d Cir. 2015) ..........................................................................9, 19

*Mayer v. Belichick*,
  605 F.3d 223 (3d Cir. 2010) ..............................................................................9

*Pagan v. Morrisania Neighborhood Family Health Ctr.*,
  2014 U.S. Dist. LEXIS 14978 WL 464787 (S.D.N.Y. Jan. 22, 2014) ................23

## TABLE OF AUTHORITIES (CONT'D)

**Case Law**                                                                          **Page**

*Price v. City of New York,*
  797 F.Supp.2d 219 (EDNY 2011) ........................................................................23

*Stryker v. HSBC Sec. (USA),*
  No. 16 Civ. 9424 (JGK), 2020 U.S. Dist. LEXIS 158630 at *9
  (S.D.N.Y. Aug. 31, 2020) ......................................................................................21

*Swierkiewicz v. Sorema*
  *N.A.,* 534 U.S. 506 S.Ct. 922 (2002)................................................................9, 20

*Trent v. Town of Brookhaven,*
  966 F. Supp. 2d 196 (E.D .N.Y. 2013) ...............................................................21

*Vega v. Hempstead Union Free Sch. Dist.,*
  801 F.3d 72 (2d Cir. 2015) ...................................................................................20

*Williams v. AT&T Mobility Servs. LLC,*
  847 F.3d 384 (6th Cir. 2017) ...............................................................................23

## PRELIMINARY STATEMENT

Defendant has filed a motion to dismiss Plaintiff's complaint for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6). While defendant argues extensively that they had a non-discriminatory reason to terminate Plaintiff, **the only issue for the court to determine at the motion to dismiss stage under Federal Rules of Civil Procedure 12(b)(6) and 8(a) is whether or not Plaintiff has sufficiently alleged his claims as set forth in the complaint**. If the Court finds that Plaintiff has met his minimal pleading burden, then that ends the inquiry and defendant's motion must be denied.

For the reasons expressed in more detail below, Plaintiff has sufficiently pled facts that establish claims of disability discrimination, discrimination under the Fair Chance Act and FMLA retaliation. Defendants cannot establish that Plaintiff's claims fail as a matter of law in order to overcome the immense burden required under a motion to dismiss an employment discrimination case. Plaintiff alleged that he suffered from a disability, took legally protected medical leave due to his disability and was retaliated against in direct response for same. Moreover, Plaintiff has sufficiently alleged that his criminal case resulted in a non-conviction and he was terminated for same, a *per se* violation of the Fair Chance Act.

Even if this Court were to consider defendant's purported reasons for terminating Plaintiff, their arguments are replete with genuine issues of material fact that cannot be decided at this stage of the proceedings. For instance, Plaintiff disputes that any "intentional misrepresentation" was made to defendant and his pleadings make that fact abundantly clear. Rather, the pleadings demonstrate that Plaintiff needed a leave due to his disability, and this leave was cut short when he was terminated, thereby establishing the necessary elements of plaintiff's discrimination claims. The pleadings further demonstrate that he was discriminated against for a non-conviction. Given these facts and the deference to be given Plaintiff on a motion to dismiss, Plaintiff has sufficiently

1

pled causes of action under the New York City Human Rights Law ("NYCHRL"), the New York State Executive Law ("NYSEL"), and the Family Medical Leave Act ("FMLA") against the Defendants in this case and Defendants' motion to dismiss should be denied at this time.

## STATEMENT OF FACTS

### General Background

Plaintiff Justin Rindos began employment with Defendant Partners Group in or around 2010. Plaintiff's First Amended Complaint at ¶ 5. At the time of his unlawful termination, Mr. Rindos was the Global Co-Head of the Structuring Solutions business unit, Deputy Office Head of the New York office and Chief Financial Officer of Partners Group Private Equity (Master Fund), LLC (the "40 Act Fund"). *Id.* at ¶5-6. In these positions, Mr. Rindos was a strong performer and did not receive any write-ups, disciplinary action or significant documented performance issues during his employment. *Id.* at ¶7. Rather, he consistently received extremely positive reviews. *Id.* at ¶ 8.

### Plaintiff's Mental Health Diagnoses

In or around July 2021, Mr. Rindos was diagnosed with general anxiety and depression. *Id.* at ¶ 9. These diagnoses were shared with members of Defendant's upper management and Human Resources Department. *Id.* Shortly thereafter, on December 19, 2021, Mr. Rindos was arrested in connection with an incident that occurred in his home and subsequently was charged with aggravated assault. *Id.* at ¶ 10. He was struggling with alcoholism and was heavily intoxicated at the time of the incident. *Id.* On or about December 28, 2021, Mr. Rindos reached out to members of the Company's Executive Team and the Company's Chief People Officer, regarding the fact that he was seeking inpatient treatment for his own mental health. *Id.* at ¶ 11.

2

**<u>Plaintiff's First Request for Leave</u>**

Mr. Rindos requested an approximate one (1) month leave from January 4, 2022 until January 30, 2022. *Id.* at ¶ 12. In response to this request, the Company forwarded Mr. Rindos FMLA leave request forms, which were ultimately completed by Caron Treatment Centers, the inpatient treatment facility where Mr. Rindos was set to complete treatment. In these forms, Caron Treatment Centers made clear that this request for leave was due to Mr. Rindos' diagnosis of alcohol use disorder. *Id.* at ¶ 13. On or about January 19, 2022, Mr. Rindos reached out to both Mr. Cagnati and Tobias Giesser, Managing Director and Global Co-Head of Structuring Solutions, to let them know that at that time, he planned on returning to work on February 1, 2022. *Id.* at ¶ 14. Mr. Rindos received a text from Mr. Cagnati on January 20, 2022 indicating that this was not a problem and that he hoped Mr. Rindos was doing well. *Id.* at ¶ 14.

**<u>Plaintiff's Arrest</u>**

On January 23, 2022, a mere three (3) days later, Mr. Rindos received a call from Mr. Cagnati while in inpatient treatment at Caron Treatment Centers, who stated that it had been brought to the Company's attention that Mr. Rindos was arrested in December of 2021. *Id.* at ¶ 15. In response, Mr. Rindos admitted that he was arrested and explained that it was an alcohol related incident that resulted in the facts outlined in the arrest report. *Id.* at ¶ 15. **At no point did Mr. Rindos make any intentional misrepresentations regarding his arrest or conviction history.** *Ibid.* That same day, January 23, 2022, Rob Collins, Partner, Head of the Company's New York office and President and board member of the 40 Act Fund, reached out to Mr. Rindos to inform him that the Company was made aware of the arrest when an employee of Partners Group's Structuring Solutions business unit brought it to their attention. *Id.* at ¶16. During this call, Mr. Collins indicated that Dave Layton, Chief Executive Officer of the Company, had

3

contacted Mr. Collins to inquire about the incident. Mr. Collins noted that he had expressed to Mr. Layton that Mr. Rindos was "one of the most valued employees at the Company and that the Company should approach the situation in a highly supportive manner." *Id.* at ¶ 17. Mr. Collins explained that Mr. Layton stated that "this was the correct approach." *Id.* at ¶ 18. Additionally, Mr. Rindos informed Mr. Collins that he was at Caron Treatment Centers due to his alcoholism and would return to work when possible. *Id.* at ¶ 18. Finally, Mr. Collins indicated that upon the request of the Company, he was in discussions with Mr. Joshua Deringer, Esq., counsel to the 40 Act Fund, to determine the consequences of the arrest for both the Company and the 40 Act Fund. *Id.* at ¶ 18.

On January 26, 2022, Mr. Collins explained to Mr. Rindos that Mr. Deringer confirmed that there was no requirement that the Company fire him and that everything would remain status quo for the time being. *Id.* at ¶ 19. Mr. Collins explained that "the arrest was completely irrelevant to the 40 Act Fund as it did not have a material impact on the Company's ability to manage the 40 Act Fund." *Id.* at ¶ 20. Mr. Collins further explained to Mr. Rindos that Mr. Deringer recommended that Mr. Rindos' medical leave was not an issue, that the topic be discussed with the board of the 40 Act Fund in executive session and that he remain the CFO of the 40 Act Fund pending his return from medical leave. *Id.* at ¶ 20.

On or about January 28, 2022, while Mr. Rindos was still undergoing inpatient treatment at Caron Treatment Centers, Mr. Rindos had a conversation with the Company's European Regional Head of HR, Amanda Evans, and Lauren Zierolf of the Company's HR business unit. *Id.* at ¶ 21. During this conversation, Mr. Rindos walked Evans and Zierolf through his history of alcoholism and mental health issues since July 2021 and contributing factors, including his mother's terminal illness which the Company was aware of, and other employment related matters

4

which members of the Executive Team were similarly aware, as well as discussed the circumstances surrounding his arrest. *Id.* at ¶ 22. Mr. Rindos indicated that his arrest and subsequent charges were the result of an alcohol related incident which were likely to be resolved in a manner that would not result in a criminal conviction. *Id.* at ¶ 23. Again, Mr. Rindos did not make any intentional misrepresentations regarding his arrest or conviction history. *Ibid.* As he indicated to Evans and Zierolf, Mr. Rindos anticipated that his arrest would result in a non-conviction, as it would likely be dismissed at the completion of the Pre-Trial Intervention (PTI) program. *Id.* at ¶ 24. Additionally, Mr. Rindos provided a detailed explanation of the treatment he was currently undergoing at Caron Treatment Centers as well as the on-going outpatient treatment which was to continue post-discharge. *Id.* at ¶ 25.

## Plaintiff's Second Request for Leave

On or about January 31, 2022, Mr. Rindos made a request for an extension of his medical leave due to his own mental health. *Id.* at ¶ 26. This request was also made due to his need to attend daily therapy related to his Post Traumatic Stress Disorder (PTSD) diagnosis. *Id.* at ¶ 26. In response, Lauren Zierolf emailed Mr. Rindos granting his request for an additional six (6) month medical leave and indicating that part of this leave would be designated as FMLA leave. Zierolf indicated that Mr. Rindos' FMLA leave would be exhausted on March 24th, at which point in would be converted to a standard request for medical leave due to a disability. *Id.* at ¶ 27. From approximately early February until May of 2022, Mr. Rindos and the Company had very little, if any, communication. *Id.* at ¶ 28.

## Plaintiff's Resolution of his Criminal Case

On May 11, 2022, Mr. Rindos resolved his pending criminal matter via acceptance into New Jersey's Pre-Trial Intervention (PTI) program, which notably does not result in a criminal

conviction. *Id.* at ¶ 29.   Mr. Rindos subsequently completed the PTI program, and the charges pending against him were dismissed. *Id.* at ¶ 29; *see also New Jersey Rule of Court 3*:28-7.   Mr. Rindos' criminal defense attorney notified the Company's corporate counsel, Lisa Lyle, on the same day as to the resolution of Mr. Rindos' pending criminal matter. *Id.* at ¶ 30.

### Plaintiff's Unlawful Termination

Shortly after Mr. Rindos' acceptance into the PTI program, he received an email from Nicole Meade, Regional Head of the Company's Human Resources business unit, asking to schedule a meeting with her and Roberto Cagnati the week of May 16, 2022 New York to discuss "perspective on Mr. Rindos' points of view." *Id.* at ¶ 31. When Mr. Rindos attended this meeting on May 19th, he was asked to provide "his side of the story" from the incident in December. *Id.* at ¶ 32. In response, Mr. Rindos shared information regarding the incident and the fact that he was accepted into the PTI program, which would not result in a criminal conviction. *Id.* at ¶ 32. He also brought up his concerns about his own privacy and legal protections he was afforded under the Fair Chance Act. *Id.* at ¶ 32. Yet again, Mr. Rindos did not make any intentional misrepresentations regarding his arrest or conviction history. *Id.* at ¶ 33. At no point in time was there any interest by Ms. Meade or Mr. Cagnati into the rehabilitation undertaken to date by Mr. Rindos nor plans for the future. *Id.* at ¶ 34. Mr. Cagnati then proceeded to state that he had no choice but to separate the employment relationship with Mr. Rindos. *Id.* at ¶ 35. Rather than properly address Mr. Rindos' concerns about Partner Group's potential violation of the law, Ms. Meade read a prepared statement and summarily terminated Mr. Rindos' employment with the Company. *Id.* at ¶ 36. Mr. Rindos asked both Ms. Meade and Mr. Cagnati whether there was any other additional information he could have shared during this meeting that would have not resulted in termination, to which each responded "No." *Id.* at ¶ 37.

6

Several hours after the zoom meeting, Mr. Rindos was provided with a letter informing him of his termination and the Company's reasoning behind it. *Id.* at ¶ 38. In particular, Partners Group cited Section 6.2 of its Company Handbook, which they claimed required Mr. Rindos to disclose his arrest within seven (7) days of its occurrence. *Id.* at ¶ 39. Upon information and belief, Partners Group selectively enforced the policies and procedures outlined in their handbook during Plaintiff's employment. *Id.* at ¶ 40. Upon information and belief, Partners Group declined to terminate other employees for serious violations of the Company Handbook. *Id.* at ¶ 41. Furthermore, the Company claimed that it considered the factors required by Article 23-A of the New York State Correction Law, including their interest in protecting the safety and welfare of other employees, as well as the offense's relation to Mr. Rindos' ability to perform the duties of his job. *Id.* at ¶ 42.

Partners Group did not conduct any analysis of the connection between Mr. Rindos' alleged conduct and the nature of his position with the Company. *Id.* at ¶ 43. Had they done so, they would come to the inevitable conclusion that there is absolutely no connection between an isolated, alcohol induced incident inside his home and Mr. Rindos' role as the Global Co-Head of the Structuring Solutions business unit. *Id.* at ¶ 43. It is likewise apparent that Partners Group did not consider the factors outlined under Article 23-A, particularly information provided by Mr. Rindos regarding his rehabilitation. *Id.* at ¶ 44. Further, given Mr. Rindos' extensive rehabilitation, there is simply no risk to any people or property at Partners Group that would warrant termination, let alone an unreasonable risk. *Id.* at ¶ 45. Finally, Partners Group also violated the Fair Chance Act ("FCA") by failing to disclose a written copy of the inquiry they conducted into Mr. Rindos' criminal history, as well as failing to share with Mr. Rindos a written copy of their complete Fair Chance analysis under Article 23-A. *Id.* at ¶ 46.

7

At no point in their letter to Mr. Rindos did Partners Group indicate that he made any intentional misrepresentations regarding his arrest or conviction history.  Partners Group did, however, make clear that they relied on Plaintiff's arrest and the "serious nature of the conduct that led to [his] arrest" despite the charges being resolved in a manner that resulted in a non-conviction.  *Id.* at ¶ 47.  Furthermore, Partners Group was aware of Plaintiff's arrest by January 23, 2022 at the latest, yet did not terminate his employment until May 19, 2022, after Plaintiff requested medical leave due to his PTSD diagnosis and need for treatment related to his diagnosis of alcoholism.  The temporal proximity between these events demonstrate Partners Group's discriminatory and retaliatory animus towards Mr. Rindos.  *Id.* at ¶ 48.  The only logical explanation for Plaintiff's termination is that Partners Group discriminated against Plaintiff due to his disabilities, which they were aware of, his involvement in the criminal justice system and in response to his request for accommodations by way of medical leave.  *Id.* at ¶ 49.  Partners Group's stated reason for terminating Mr. Rindos is therefore pretextual, allowing for a determination that he was terminated on account of his disability.  *Id.* at ¶ 50.

## LEGAL STANDARD

"The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff." *Lee v. Song BMG Music Entm't, Inc.*, 557 F. Supp. 2d 418, 423 (S.D.N.Y. 2008).  At this early stage of the proceedings, **all that is required of Plaintiff under Federal Rule of Civil Procedure 12(b)(6) is to plead sufficient facts "to state a claim to relief that is plausible on its face."** *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). In deciding a motion to dismiss under Rule 12(b)(6), **courts must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant."** *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Foglia v.*

*Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)) (internal quotation marks omitted). Courts are only to consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Davis*, 824 F.3d at 341 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)) (internal quotation marks omitted).

A plaintiff alleging employment discrimination may withstand a motion to dismiss without pleading each element of a prima facie case under the *McDonnell Douglas* Framework. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508-510, 122 S.Ct. 922 (2002). The Court may find the claim sufficient to comply with FRCP 8(a)(2) so long as it provides "a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendants fair notice of plaintiffs' claims of … discrimination and the grounds upon which those claims rest." *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 238 (2d Cir.2007). The plaintiff's burden to plead discriminatory intent requires only that the Complaint give "plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York,* 795 F.3d 297, 311 (2d Cir.2015).

Lastly, while Plaintiff's employment discrimination claims are under the NYSEL and NYCHRL, it is well settled that these claims are subject to the same standard of proof as claims under Title VII. *Forrest v. Jewish Guild for the Blind,* 309 A.D.2d 546, 552, 765 N.Y.S.2d 326 (1st Dep't 2003) ("the standard for recovery under section 296 of the Executive Law is in accord with the federal standards under Title VII of the Civil Rights Act of 1964 … and the human rights provisions of New York City's Administrative Code mirror the provisions of the Executive Law") (citations omitted); *see also Leibowitz v. Cornell Univ.,* 584 F.3d 487, 498 n. 1 (2d Cir.2009); *Kaur v. New York City Health & Hosps. Corp.,* 688 F.Supp.2d 317, 340 (S.D.N.Y.2010).

## LEGAL ARGUMENT

### I. PLAINTIFF HAS PLED SUFFICIENT FACTS TO SUPORT A CLAIM THAT DEFENDANT VIOLATED THE FAIR CHANCE ACT (COUNT III)

In support of its Motion to Dismiss Plaintiff's Amended Complaint, Defendant argues that they did not violate the Fair Chance Act because Plaintiff was not terminated due to his arrest, rather he was terminated for his violation of Company policy. First, this argument is completely meritless for the simple reason that Defendant was aware of Plaintiff's arrest as of January 23, 2022 yet **did not terminate his employment until nearly four months later**. Had Defendant actually terminated Plaintiff for his failure to disclose his arrest, they would have done so in January. However, it was not until the Company learned additional facts surrounding the arrest and after Plaintiff took medical leave that Plaintiff's employment was terminated. **Moreover, Defendant's own termination letter to Plaintiff states that they terminated his employment in part due to "the serious nature of the conduct that led to [his] arrest."** Second, Defendant's argument simply is not enough to meet Defendant's burden on a motion to dismiss for failure to state a claim. Particularly, this argument fails to accept as true the allegations set forth in Plaintiff's Amended Complaint, which is exactly what this Court is obligated to do on such a motion. In fact, Defendant's argument does the exact opposite. Contrary to controlling case law, Defendant attempts to substitute Plaintiff's factual allegations with its own legal and factual conclusions, which is completely inappropriate and erroneous on a motion to dismiss for failure to state a claim. Should this Court conduct a proper analysis of Plaintiff's claims to determine if his Fair Chance Act claim is plausible on its face, it will come to the inevitable conclusion that Defendant's motion must be denied.

### A. Plaintiff Plausibly Alleged that Defendant Failed to Conduct a Complete and Proper Fair Chance Analysis

Defendant maintains that the Company complied with the Fair Chance Act by "provid[ing] Plaintiff with a written letter detailing his termination, outlining the Article 23-A factors considered, and affording Plaintiff the opportunity to provide additional information before his termination was to be finalized." *See* Defendant's Memorandum of Law at page 14. However, Plaintiff offers ample factual support to the contrary and demonstrates that Defendant failed to conduct a complete and thorough Fair Chance analysis: (1) Defendant cannot demonstrate that one or both of the Article 23-A exceptions to employment discrimination based on criminal history applied; (2) Defendant did not allow Plaintiff to submit evidence of good conduct and rehabilitation, as is required under the NYCHRL and NYSHRL; (3) Defendant failed to disclose a written copy of the inquiry they conducted into Plaintiff's criminal history, as well as failing to share with Plaintiff a written copy of their complete Fair Chance Analysis under article 23(A); (4) Defendant inquired into the facts surrounding Plaintiff's arrest which is a direct violation of the FCA's provision on non-convictions. These facts nudge Plaintiff's allegations "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007).

First, Defendant's termination of Plaintiff based on his arrest violated the FCA since Defendant cannot properly establish a connection between Plaintiff's alleged conduct and the nature of his position with the Company nor demonstrate that continuing to employ Plaintiff would prove an "unreasonable risk" to the safety and welfare of the Company. Under the Fair Chance Act, "An employer cannot discipline or terminate a current employee based on their conviction history or pending case unless, after conducting a Fair Chance Analysis, the employer properly: (1) Determines that there is a direct relationship between the alleged or convicted conduct and the job; or (2) Shows that continuing to employ the person 'would involve an unreasonable risk to

11

property or to the safety or welfare of specific individuals or the general public.'" When there is a "direct relationship" between the criminal offense and the employment held by the person or when continuing to employ the person with a criminal background poses an "unreasonable risk" to the public, then the employer may take adverse action against the employee on the basis of his criminal history. N.Y. Corr. Law § 752. In other words, consideration of an employee's criminal history is only permissible if an employer can demonstrate that one or both of the Article 23-A exceptions applies. *Id*. In the instant case, Plaintiff has alleged facts sufficient facts to demonstrate that neither exception applies to him and, thus, supports the conclusion that Defendant failed to conduct a complete and proper Fair Chance analysis.

With respect to the first exception, "Article 23-A clarifies that a direct relationship 'means that the nature of criminal conduct for which the person was convicted has a direct bearing on his fitness or ability to perform one or more of the duties or responsibilities necessarily related to the…job in question.'" *Franklin v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 256460, *7 (S.D.N.Y. Jan. 26, 2022) (citing N.Y. Corr. Law § 750(3)) (a copy of which is attached hereto as "Exhibit A"). Thus, "the direct relationship exception focuses on comparing the requirements of the position to the criminal conviction." *Id.* at 12; *see, e.g., Bonacorsa v. Van Lindt*, 71 NY2d 605 (1988) (finding a "direct relationship" between a prior conviction for illegally fixing horse races and a Racing and Wagering Board license). In Franklin v. Whole Foods, the court found that plaintiff, a convicted murderer, was improperly denied employment on the basis of his criminal history since "there [was] no direct relationship between his conviction and his fitness or ability to deliver Whole Foods groceries." *Id.* at 11-12.

Here, there is nothing to suggest that Plaintiff's arrest, which did not even result in a criminal conviction, had any bearing on his fitness or ability to perform his job. Simply put, there

is no logical connection between Plaintiff's arrest for an incident inside his marital home at a time when he was suffering from multiple disabilities (which he subsequently received treatment for) and his ability to perform his role as Global Co-Head of the Structuring Solutions business unit at Partners Group. Perhaps more importantly, Defendant has failed to cite to any connection either. Therefore, Defendant has not and cannot demonstrate that this exception applies.

When considering the "unreasonable risk" exception, the employer must bear in mind the employee's rehabilitation progress as determined by the government. In *Franklin v. Whole Foods*, the Court upheld plaintiff's argument that "[t]he State of New York determined that [he] did not pose an unreasonable risk to anyone's property, safety, or welfare when it saw fit to parole him, and there is no reason the [defendant employer's] setting would alter this general conclusion." *Id.* at 13. The Court found that such an allegation, among others, "support[s] the conclusion that [plaintiff] has adequately pled that the public risk exception does not apply to him. *Id.* at 14. In the instant case, the fact that Plaintiff applied for and was admitted into New Jersey's Pre-Trial Intervention Program demonstrates that he did not pose an unreasonable risk to the safety and welfare of the Company. In fact, the State of New Jersey felt so secure with Plaintiff's prospects for rehabilitation that they chose to dismiss the charges against him. There exist no facts that would support an argument by Defendant that Plaintiff posed an unreasonable risk to the safety and welfare of the Company, rendering this exception inapplicable as well.

Construing the allegations in the Amended Complaint in the light most favorable to the Plaintiff, he has adequately alleged that the two permissible bases for employment discrimination based on criminal history do not apply. Therefore, "he has adequately alleged facts from which the Court can infer a minimal inference of discriminatory motivation," needed to survive a motion to dismiss. Had Defendant conducted a proper Fair Chance analysis, they would have come to the

inevitable conclusion that (1) there is absolutely no connection between an isolated, alcohol induced incident inside his home and Plaintiff's role as the Global Co-Head of Structuring Solutions business unit, and (2) Plaintiff's continuing employment would not present an "unreasonable risk" to the safety and welfare of the Company.

Second, and assuming *arguendo* that Defendant did conduct a proper Fair Chance Analysis, which it did not, this analysis cannot satisfy statutory requirements under NYC Fair Chance Factors (similar to the Article 23-A Factors) which dictate that an employer must consider "[a]ny additional information produced by the applicant or employee, or produced on his behalf, in regard to his rehabilitation or good conduct, including but not limited to history of positive performance and conduct on the job or in the community." NYC Commission on Human Rights. 2021. *Legal Enforcement Guidance on the Fair Chance Act and Employment Discrimination on the Basis of Criminal History,* (V)(D). https://www.nyc.gov/site/cchr/law/fair-chance-act.page. The opportunity to provide such information is integral to the Article-23 process, as such is necessary to ensure a fair evaluation, which is the very purpose of Article 23-A. Since the relevant information was never solicited from Plaintiff, it is apparent that a proper Fair Chance Analysis was never conducted. *See Matter of Acosta v New York City Dept. of Educ.,* 16 N.Y.3d 309, 316-319 (2011) ("A failure to take into consideration each of these [Article 23-A] factors results in a failure to comply with the Correction Law's mandatory directive... The Correction Law requires the DOE to 'consider' '[a]ny information produced by the person, or produced on his [or her] behalf, in regard to his [or her] rehabilitation and good conduct' in determining whether the 'unreasonable risk' exception applies to an application (Correction Law 753 [1][g])."

Third, Defendant failed to comport with statutory requirements by not disclosing a written copy of the inquiry they conducted into Plaintiff's criminal history nor sharing with Plaintiff a

written copy of their complete Fair Chance Analysis under article 23(A). According to the Guidance, "if, after completing the Fair Chance Analysis, an employer wishes to discipline or terminate an employee because it has identified a direct relationship between the criminal record and the job or an unreasonable risk to people or property, the employer must follow the Fair Chance Process." NYC Commission on Human Rights. 2021. *Legal Enforcement Guidance on the Fair Chance Act and Employment Discrimination on the Basis of Criminal History,* (VI)(B). Under the Fair Chance Process, the employer is required to: "(1) Disclose to the employee a written copy of any inquiry it conducted into the employee's criminal history; (2) Share with the employee a written copy of the employer's Fair Chance Analysis; and (3) Allow the employee a reasonable period of at least five business days from receipt of the inquiry and analysis to respond to the employer's concerns. *Id.* Here, Defendant did not follow any of the requirements of the Fair Chance Process. Defendant's termination letter to Plaintiff merely makes conclusory statements without explaining the basis for their findings under the Fair Chance Analysis. Further, Defendant failed to disclose a written copy of any inquiry they conducted into Plaintiff's criminal history. Finally, Defendant's readily admit that they considered the **"recent and violent nature of the alleged conduct that led to [Plaintiff's] arrest,"** which is a *per se* violation of the Act.

Fourth and finally, Defendant's inquiry into the facts surrounding Plaintiff's arrest at the meeting in May is a direct violation of the FCA's provision on non-convictions. The NYC Commission on Human Rights dictates that "all private employers are prohibited from seeking information about, expressing or implying an employment limitation related to, or basing an adverse employment action on, a person's non-conviction." NYC Commission on Human Rights. 2021. *Legal Enforcement Guidance on the Fair Chance Act and Employment Discrimination on the Basis of Criminal History,* (IV). Plaintiff made it abundantly clear to Defendant that he had

been accepted into the PTI Program and that his charges would result in a non-conviction and outright dismissal upon his completion of same. Moreover, Plaintiff successfully completed the PTI Program, and his charges were in fact dismissed by the State of New Jersey. Therefore, Defendant's reliance on the facts surrounding his arrest, which they readily admit in their termination letter, constitutes a *per se* violation of the Act.

### B. Defendant Fails to Allege Any Facts Supporting the Conclusion that Plaintiff Intentionally Misrepresented his Arrest

Defendant further argues that they were not bound by the express terms of the FCA because Plaintiff made intentional misrepresentations regarding his arrest. However, Defendant's conclusory allegation that Plaintiff "intentionally misrepresented his arrest history," is a thinly veiled attempt to compensate for Defendant's lack of a proper FCA analysis. At no point in their termination letter to Plaintiff did Defendant indicate that he made any intentional representations regarding his arrest or conviction history. Instead, they made it clear that they relied on Plaintiff's arrest and the "serious nature of the conduct that led to [his] arrest." Yet now, recognizing the glaring holes in their Fair Chance analysis, Defendant frivolously alleges that Plaintiff "intentionally misrepresented" his arrest history and, therefore, a Fair Chance analysis was not required.

Under the NYCHRL, an employer is not prohibited "from disqualifying an applicant [or employee] based on the applicant's [or employee's] intentional misrepresentation about their conviction history or pending cases." NYC Commission on Human Rights. 2021. *Legal Enforcement Guidance on the Fair Chance Act and Employment Discrimination on the Basis of Criminal History,* (V)(E)(v). https://www.nyc.gov/site/cchr/law/fair-chance-act.page. According to the NYC Commission on Human Rights's Legal Enforcement Guidance on [the FCA],

"misrepresentation is intentional if it is made with knowledge of its falsity and with intent or purpose to deceive." *Id.*

Here, Plaintiff's Amended Complaint makes clear that he did not made any intentional misrepresentations regarding his arrest or conviction history. In fact, it is indisputable that at no point did Plaintiff indicate to Defendant that he was not arrested or charged with criminal offenses. Moreover, when he was asked by Defendant to discuss his arrest, Plaintiff was forthcoming and described the circumstances surrounding his arrest. Plaintiff further informed Defendant of the disposition of his criminal charges, indicating that he had been accepted into the PTI Program. While Defendant claims that Plaintiff's initial failure to report his arrest constitutes a deliberately misleading omission and therefore an intentional misrepresentation under the FCA, Defendant provides no legally binding support for this notion. The case law cited by Defendant in support of their argument that Plaintiff's violation of the Handbook constituted intentional misrepresentation is from the United States Bankruptcy Court for the Middle District of Florida – it has absolutely no relevance or applicability to the instant discrimination claim. Therefore, construing the allegations in the Amended Complaint in the light most favorable to the Plaintiff, it is irrefutable that Plaintiff has sufficiently pled that Defendant violated the FCA in terminating his employment.

### C. Plaintiff Plausibly Alleges a Discriminatory Motive Under his FCA Claim

Despite evidence to the contrary (e.g., the termination letter), Defendant attempts to argue that its adverse action against Plaintiff was "ultimately…due to his failure to comply with Section 6.2 of the Company Handbook." Defendant's Memorandum of Law at 14. Defendant's alleged nondiscriminatory rationale for terminating Plaintiff, however, "does not preclude inquiry into whether the [adverse employment action] was in fact based not on the [nondiscriminatory reason] but, rather on discrimination…" *Godbolt v. Verizon New York Inc.,* 2013 N.Y. Misc. LEXIS 219,

*6-7 (Sup. Ct. 2013). *See also James v. New York Racing Ass'n,* 233 F.3d 149, 157 (2nd Cir. 2000) ("once the employer has given an employer has given an explanation, there is no arbitrary rule or presumption as to sufficiency"). Therefore, even if Plaintiff's failure to comply with the Company Handbook would have been a legitimate reason for terminating him, it does not follow that it was the *actual* reason.

The issue Defendant raises regarding a nondiscriminatory rationale for Plaintiff's termination cannot be adjudicated on a motion to dismiss and must await a later stage of the litigation, when Defendant can make its argument in a motion for summary judgment. *Franklin v. Whole Foods* is instructive on this point. In *Franklin*, Defendants argued that they had a "legitimate, nondiscriminatory reason for declining to hire [plaintiff]," which was that he had not disclosed his criminal history and, thus, lied on his employment application. However, the Court held that **"alleged legitimate reasons for the adverse employment action cannot be considered on a motion to dismiss."** *Franklin v. Whole Food Mkt. Grp., Inc.*, 2022 WL 256460, *7-8 (S.D.N.Y. Jan. 26, 2022).

Here, Defendant is attempting to foist upon Plaintiff burdens that he is not required to bear on a motion to dismiss. Not only is Plaintiff not required to rebut Defendant's proffered non-discriminatory rationale, he need not even "allege specific facts establishing a prima facie case of discrimination in order to withstand a motion to dismiss." *Carter v. Verizon*, 2015 U.S. Dist. LEXIS 6370, *15, 2015 WL 247344 (S.D.N.Y. 2015). *See also Boykin v. KeyCorp*, 521 F.3d 202, 214-16 (2d Cir. 2008) (finding that as long as the complaint gives the defendant "fair notice of [the plaintiff's] claim and the grounds upon which it rests," and "indicate[s] the possibility of discrimination and thus present[s] a plausible claim for disparate treatment," the complaint satisfies the strictures of Fed. R. Civ. P. 8(a)); *Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x

68, 2016 U.S. App. LEXIS 784, 2016 WL 210098, at *1 (2d Cir. Jan. 19, 2016) ("'[A]t the initial stage of the litigation' in a Title VII case, 'the plaintiff does not need substantial evidence of discriminatory intent.'") (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

Additionally, even if Defendant's decision to terminate Plaintiff was motivated by a non-discriminatory reason – which the court may not assume on a motion to dismiss – it does not follow that such was Defendant's only motive, as evidenced by the termination letter. Plaintiff's failure to notify the Company of his arrest within 7 days (in accordance with the handbook) may have been only one of the factors motivating the adverse action, with his arrest itself being another. The presence of certain lawful motives does not protect Defendant from liability if unlawful motives were simultaneously present. *See Bennet v. Health Mgt. Sys., Inc.*, 936 N.Y.S.2d 112, 121 (1st Dept. App. Div. 2011) ("the plaintiff may leave unchallenged one or more of the defendant's proffered reasons for its actions and may instead seek only to show that discrimination was just one of the motivations for the conduct"). In the instant case, Plaintiff plausibly alleges that his termination was based, in whole or in part, on his arrest history. Plaintiff's claims are hardly speculative considering that the termination letter itself readily acknowledges that Plaintiff's employment was being terminated due to "the serious nature of the conduct that led to [his] arrest," as well as "the recent and violent nature of the alleged conduct that led to [his] arrest."

Accordingly, Defendant has not met its extremely lofty burden on a motion to dismiss for failure to state a claim, and Defendant's motion must be denied.

## II.  Plaintiff Plausibly Alleges Discrimination Under the NYSHRL and NYCHRL (Counts I and II)

Defendant argues that Plaintiff's Amended Complaint is devoid of any facts that suggest Defendant terminated Plaintiff due to his disability. Defendant's Memorandum of Law at 15. In

doing so, Defendant blatantly ignores the most cogent fact Plaintiff alleges under his NYSRHL and NYCHRL discrimination claims: The temporal proximity between Plaintiff's disclosure of his disability and his subsequent termination, which is sufficient to raise an inference of discrimination.  Thus, dismissal is not warranted on Counts I and II of Plaintiff's Amended Complaint.

To state a *prima facie* case of disability discrimination under the NYSHRL and NYCHRL, a complaint must plead that (1) the employer is subject to the HRLs; (2) the plaintiff suffers from a disability within the meaning of the HRLs; (3) the plaintiff is otherwise qualified to perform their job; and (4) the plaintiff suffered an adverse employment decision because of their disability. *Brown v. Pension Bds.*, 488 F. Supp. 2d 395, 405-06 (S.D.N.Y 2007).  However, at the motion to dismiss stage, "a discrimination complaint need not allege facts establishing each element of prima facie case to survive." *EEOC v. Port Auth. of N.Y. & N.J.,* 768 F.3d 247, 254 (2d Cir. 2014).[1]

Instead, "a complaint need only plead allegations that give rise to a plausible inference of unlawful discrimination." *Farmer v. Shack Enters., LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, S.Ct. 922 (2002) (holding that an employment discrimination complaint need not include facts constituting a prima facie case of discrimination, noting that the prima facie case requirement is an evidentiary standard).  Courts have consistently held that "temporal proximity of an employee's disclosure of a disability to his termination supports an inference of discrimination." *Baron v. Adv. Asset & Prop. Mgmt. Solutions, LLC*, 15

---

[1] Defendant overstates Plaintiff's actual burden at the pleading and motion to dismiss stages by improperly asserting that the "plaintiff has the initial burden to establish a prima facie case of discrimination.

F. Supp. 3d 274, 283 (EDNY 2014); *see Stryker v. HSBC Sec. (USA)*, No. 16 Civ. 9424 (JGK), 2020 U.S. Dist. LEXIS 158630 at \*9, 2020 WL 5127461 (S.D.N.Y. Aug. 31, 2020) ("[A] strong showing of temporal proximity between evidence of a plaintiff's disability and an adverse action can raise an inference of discrimination."). The relevant case law has generally regarded "temporal proximity" to mean "gaps of two months or less – between disclosure of a disability and an adverse action." *Kamiel v. Hai St. Kitchen & Co. LLC*, 2023 U.S. Dist. LEXIS 42026, \*10, 2023 WL 2473333 (S.D.N.Y. Mar. 13, 2023). At summary judgment, temporal proximity *alone* is insufficient to demonstrate a pretext for discrimination; however, under a 12(b)(6) analysis, "[it] may be sufficient to establish an inference of discrimination." *Forde v. Beth Israel Med. Center*, 546 F. Supp. 2d 142, 152 (S.D.N.Y. 2008); *see Trent v. Town of Brookhaven*, 966 F. Supp. 2d 196, 206 (E.D.N.Y. 2013) ("Temporal proximity may be sufficient to show a prima facie case, but it is insufficient to demonstrate pretext.").

Here, Plaintiff's disclosure of his alcoholism, PTSD and other mental health issues occurred on or around his meeting on January 28, 2022, yet he was not terminated until almost May 19, 2022. After Plaintiff's disclosure of his disability on January 28, Defendant was essentially barred from taking any adverse action against Plaintiff as he was on FMLA leave, a protected activity, until March 24, 2022. While the gap between Plaintiff's disclosure of his disability and his termination exceeded two months, the gap between the expiration of his FMLA leave and his termination fell with the two-month standard. Thus, the relevant time period is the end of Plaintiff's FMLA leave (March 24) to the date of his termination (May 19) – This gap of less than two months, like the temporal proximity alleged in *Kamiel v. Hai*, is short enough to give rise to an inference of discrimination. Defendant either ignores this temporal proximity or

purposely suppresses it by inaccurately asserting that Plaintiff has plead no facts that give rise to an inference of discrimination.

Furthermore, Defendant's assertion that "an employer's termination of an employee for his or her behavior while drunk or intoxicated is not discriminatory" is misleading and irrelevant to the Amended Complaint. Defendant's Memorandum of Law at 16. Plaintiff's discrimination claims under Count I and Count II do not allege that Defendant discriminated against him on the basis of his intoxicated behavior, but rather on the basis of his disabilities. Again, the fact that Defendant did not terminate Plaintiff when they first learned of his arrest completely undermines their position that the failure to disclose his arrest was the only reason for his termination. Instead, it is clear that after Plaintiff disclosed his disabilities and took FMLA leave followed by a request for additional medical leave to address same, Defendant made the discriminatory and retaliatory decision to terminate his employment. Accordingly, Defendant's motion must be denied.

### A. Plaintiff Plausibly Alleges Failure to Accommodate Under the NYSHRL and NYCHRL (Counts I and II)

Defendant argues that Plaintiff's failure to accommodate claims under the NYSHRL and NYCHRL fail under the third and fourth elements of the prima facie case. Defendant provides no reasoning for why Plaintiff allegedly did not meet the third element. Regarding the fourth element, Defendant explains that because "both of Plaintiff's requests for medical leave were granted," Defendant did not fail to provide Plaintiff with the requested reasonable accommodation. However, it is abundantly clear that Plaintiff's employment was terminated at a time that he was requesting additional medical leave due to his disability. Accordingly, Defendant's arguments are without merit.

To establish a prima facie case for failure to accommodate under the NYSHRL, and the permissive NYCHRL, Plaintiff has the burden to show that (1) he has a disability as defined under the NYSHRL, (2) an employer covered under the NYSHRL had notice of Plaintiff's disability, (3) Plaintiff could perform the essential functions of the job in question with reasonable accommodation, and (4) the employer refused to make such accommodations. *Price v. City of New York*, 797 F.Supp.2d 219, 229 (EDNY 2011) (citing *Graves v. Finch Pruyn & Co., Inc.,* 457 F.3d 181, 184 (2nd Cir. 2006)). NYSHRL failure to accommodate claims are governed by the same legal standards as federal ADA claims. *See Fox v. Costco Wholesale Corp.,* 918 F.3d 65, 76 (2d Cir. 2019) ("NYSHRL claims are analyzed as ADA claims."). That standard also applies in general terms to NYCHRL failure to accommodate claims.

Since "[t]he elements that apply to an ADA claim apply to claims under the NYSHRL and NYCHRL as well," Plaintiff does plausibly allege a failure to accommodate claim. *See Pagan v. Morrisania Neighborhood Family Health Ctr.,* 2014 U.S. Dist. LEXIS 14978, 2014 WL 464787, at *6 (S.D.N.Y. Jan. 22, 2014). First, under the ADA, medical leave can constitute a reasonable accommodation. *Williams v. AT&T Mobility Servs. LLC,* 847 F.3d 384, 394 (6th Cir. 2017). Given that the NYSHRL failure to accommodate claims are governed by the same legal standards as federal ADA claims, it follows that a medical leave can constitute a reasonable accommodation in the context of the NYSHRL. Second, although Defendant initially granted Plaintiff's request for medical leave, this action did not absolve Defendant of their continuing duty to accommodate, which they ignored by terminating Plaintiff in the midst of his leave. In *Criado v. IBM*, the court found that "allowing a disabled employee a one-month leave of absence [did] not absolve an employer's duty to accommodate, especially where the extra leave requested [was] not expected to be prolonged or perpetual." *Criado v. IBM Corp.,* 145 F.3d 437, 439 (1st Cir. 1998). Thus,

"the duty to provide reasonable accommodation is a continuing one, however, and not exhausted by one effort." *Id.* at 445. Considering these facts, the *Criado* court concluded that the jury could have found that the defendant terminated the plaintiff because of her disability.

In the instant case, Plaintiff has sufficiently pled that Defendant completely ignored their duty to accommodate by terminating Plaintiff during a period of time that Plaintiff was on medical leave. While Defendant claims that they granted Plaintiff's request for leave in January of 2022, they completely ignore the fact that his termination took place during the requested extension of his leave. Therefore, and contrary to Defendant's contentions, Defendant did not comply with their duty to accommodate, and their motion to dismiss on Plaintiff's claims of disability discrimination must be denied.

## III.   PLAINTIFF HAS PLED SUFFICIENT FACTS TO SUPORT A CLAIM THAT DEFENDANT VIOLATED THE FMLA (COUNT IV)

Finally, Defendant argues that Plaintiff's claim that Defendant violated the FMLA must be dismissed because Plaintiff cannot make out a cause of action under the law. In support of this argument, Defendant suggests that there is no causal relationship between Plaintiff's FMLA leave and his termination. First, Plaintiff's Amended Complaint clearly outlines sufficient facts demonstrating a casual relationship between his FMLA leave and his termination. Second, this argument completely ignores the fact that Plaintiff's disclosure of his arrest occurred **before** he even began his FMLA leave. Therefore, Defendant's argument cannot survive on a motion to dismiss for failure to state a claim.

To plead a claim for FMLA retaliation, a complaint must contain enough facts to plausibly suggest that the plaintiff: (1) took FMLA leave; (2) suffered an adverse employment action; and, (3) that the adverse action was causally related to his/her leave. *Hansler v. Lehigh Valley Hosp.*

*Network*, 798 F.3d 149, 158-59 (3d Cir. 2015). To demonstrate a causal connection, a plaintiff must generally establish either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism, coupled with timing to establish a causal link." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (internal quotations omitted); *see also Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 143, 146-47 (3d Cir. 2004). When the "temporal proximity" between the protected activity and adverse action is "unduly suggestive," this "is sufficient standing alone to create an inference of causality and defeat summary judgment." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir.2007). However, "where the temporal proximity is not 'unusually suggestive,' we ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'" *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir.2000)).

In the instant matter, there exists both unusually suggestive temporal proximity between Plaintiff's FMLA leave and his termination, as well as additional evidence suggestive of retaliation. Plaintiff's initial request for an extension of his medical leave occurred on January 31, 2022. In response to this request for leave, the Company's HR department indicated that the first twelve weeks would be designated as FMLA leave, which would expire on March 24th. Less than two months later, Plaintiff's employment with the Company was terminated summarily. Certainly, this timing alone is sufficient to defeat a motion to dismiss on Plaintiff's claim of FMLA retaliation.

However, Plaintiff has also pled facts that suggest that Defendant retaliated against him for taking FMLA leave he was entitled to under law. As noted above, it is undisputed that Plaintiff informed Defendant of his arrest in January of 2022, yet the alleged decision to terminate his employment for failing to disclose this arrest occurred **after** his FMLA leave expired in March of

2022. Therefore, a reasonable inference can certainly be made that Defendant retaliated against Plaintiff for exhausting his protected FMLA leave. Certainly, these facts are sufficient to survive a motion to dismiss Plaintiff's complaint for failure to state a claim.

Accordingly, Defendant's Motion to Dismiss on Count IV of Plaintiff's Amended Complaint for FMLA retaliation is without merit and must be denied.

## **CONCLUSION**

In sum, Plaintiff has sufficiently set forth facts to establish his employment discrimination claims as set forth in Counts One through Four of the Complaint. Defendant has failed to establish that any of Plaintiff's claims fail as a matter of law and instead improperly urges this Court to adopt their alleged non-discriminatory reason for termination without affording Plaintiff the benefit of discovery or a meaningful opportunity to rebut their reasoning as contemplated by the *McDonnell Douglas* framework. The facts as alleged in the complaint clearly allow this Court to infer the following: defendants discriminated against Mr. Rindos based on his disability and his non-conviction; defendants failed to accommodate Mr. Rindos by terminating him while he was still out on his leave and terminating him before he could return to his position; and retaliated against him for taking his FMLA leave. Based on the foregoing, Plaintiff respectfully requests that defendant's motion to dismiss be denied.

Respectfully submitted,

GREGORY B. NOBLE
ROBERT A. BALLARD, III

# EXHIBIT A

2022 WL 256460
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Henry FRANKLIN, on behalf of himself
and others similarly situated, Plaintiff,

v.

WHOLE FOODS MARKET

GROUP, INC., Amazon.com, Inc.,
Cornucopia Logistics, LLC, Defendant.

20-CV-4935 (VEC)
|
Signed 01/26/2022

**Attorneys and Law Firms**

Rony Guldmann, C.K. Lee, Lee Litigation Group PLLC, New York, NY, for Plaintiff.

Grace Elizabeth Hart, Gibson, Dunn & Crutcher, LLP, New York, NY, Greta Bradlee Williams, Jason C. Schwartz, Gibson, Dunn & Crutcher, LLP, Washington, DC, for Defendants Whole Foods Market Group, Inc., Amazon.com, Inc.

Evan Benjamin Citron, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., New York, NY, for Defendant Cornucopia Logistics, LLC.

OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

**\*1** In this putative class action, Henry Franklin sued Whole Foods Market Group, Inc. ("Whole Foods"), Amazon.com, Inc. ("Amazon"), and Cornucopia Logistics, LLC ("Cornucopia"), for employment discrimination based on his criminal history in violation of (1) the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 292 *et. seq.*; (2) the New York City Human Rights Law ("NYCHRL") as amended by the Fair Chance Act, N.Y.C. Admin. Code § 8-101 *et seq.*; and (3) the New York State Fair Credit Reporting Act ("NY FCRA"), N.Y. Gen. Bus. Law § 380 *et seq.* Defendants moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim and Rule 12(b)(1) for lack of standing. For the reasons discussed below, Defendants' motion is DENIED. [1]

**BACKGROUND**

**\*2** In April 2019, Franklin applied for a job as a delivery worker with Cornucopia, a vendor that has a contract with Amazon to provide delivery services for its subsidiary Whole Foods. First Amended Complaint ("FAC"), Dkt. 24 ¶ 3. Franklin has a criminal history; he was paroled from prison in 2018 after serving nearly 25 years on a conviction for second-degree murder. Background Report, Dkt. 35-1 at 3. Franklin contends that the job application, which was posted by Cornucopia on a recruiting website, stated that applicants must consent to a background check as part of the job application process. FAC ¶ 4. Amazon and Whole Foods claim Franklin answered "no" when asked as part of his application whether he had any prior convictions. Mem. of Law, Dkt. 34 at 2 (citing Background Report at 6); Mem. of Law, Dkt. 43 at 1 (same).

Shortly after Franklin completed the online application, he alleges that he received a letter from Amazon informing him that Amazon had performed a background check and would make a final decision on his application in ten days. FAC, ¶¶ 4–5; Screening Report Cover Letter, Dkt. 24-1 at 1. The letter further invited him to contact the screening company, Accurate Background, Inc., if he wanted to dispute the accuracy of the Background Report. Screening Report Cover Letter at 1. Franklin alleges that he received another letter from Amazon two weeks later, informing him that his application had been denied "in whole or in part" due to information contained in the Background Report. Adverse Action Letter, Dkt. 24-2 at 1.

On June 26, 2020, Franklin filed this action against Amazon and Whole Foods. Compl., Dkt. 1. On September 25, 2020, he amended his complaint and added Cornucopia as a Defendant. FAC, Dkt. 24. Franklin alleges that Defendants unlawfully discriminated against him based on his criminal history and that they used discriminatory screening policies and practices in violation of the NYSHRL, the NYCHRL, and the NY FCRA. FAC ¶¶ 1–2. [2] Defendants moved to dismiss the FAC for failure to state a claim pursuant to Rule 12(b)(6) and for lack of standing pursuant to Rule 12(b)(1). Notices of Mots., Dkts. 33, 42. [3] Franklin opposes the motions. Resp., Dkt. 37; Resp., Dkt. 45.

## DISCUSSION

### 1. Defendants' Motion to Dismiss for Failure to State a Claim

**\*3** To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted).

### A. Franklin Has Adequately Alleged that Whole Foods and Amazon Were His Prospective Employers

At the time Franklin applied to work at Cornucopia, the NYSHRL and NYCHRL non-discrimination provisions applied only to "employers." N.Y. Exec. Law § 296(15); N.Y.C. Admin. Code § 8-107(10); *see also Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 183–84 (2017).[4] Amazon and Whole Foods argue that Franklin has failed to plead adequately that any entity other than Cornucopia was his prospective employer.[5] Mem. of Law, Dkt. 34 at 7–8. In *Griffin v. Sirva, Inc.*, the New York Court of Appeals adopted a four-factor test to determine whether an entity is an individual's direct employer.[6] The four factors are: "(1) the selection and engagement of the servant; (2) the payment of salary or wages; (3) the power of dismissal; and (4) the power of control of the servant's conduct." 29 N.Y. 3d at 186 (quoting *State Div. of Hum. Rts. v. GTE Corp.*, 109 A.D.2d 1082, 1083 (4th Dep't 1985) (internal quotation marks omitted)).

Plaintiff's complaint is largely conclusory. Franklin alleges, with no factual support, that "Amazon controls every aspect of [Cornucopia's employees'] employment, including supervising their work and training them to utilize Amazon proprietary technology to perform their work." FAC ¶ 11. Although it is a very close question, the Court finds that Plaintiff has barely alleged adequately that Amazon and Whole Foods have sufficient control over Cornucopia's employees that they can be considered Franklin's employer, alongside Cornucopia. Whether Plaintiff can sustain that position at summary judgment remains to be seen.

The Court bases its conclusion on the facts pled that tend to show that Amazon has veto power over hiring.[7] With respect to employee selection, in its letters to Plaintiff, Amazon stated that a criminal background check was required to determine his eligibility "to deliver to Amazon customers on behalf of [Cornucopia]." Screening Report Cover Letter at 1. When Amazon rejected Plaintiff's "request to provide services to Amazon on behalf of [Cornucopia]," Adverse Action Letter at 1,[8] that was, apparently, the end of any prospect Plaintiff had for becoming a Cornucopia employee. Although the FAC could have more clearly alleged the connection, a fair inference is that because Amazon rejected Franklin as someone who could deliver Amazon products, Cornucopia would not hire him. That is barely sufficient to allege that Amazon and Whole Foods have authoritative control over hiring.

**\*4** Amazon and Whole Foods rely on the letters Amazon sent to Franklin to argue that Cornucopia was Franklin's exclusive employer. Amazon and Whole Foods are correct that the Screening Report Cover Letter refers to Franklin's eligibility to deliver to Amazon customers "on behalf of [his] employer," which implies that Amazon and Whole Foods saw Cornucopia as Franklin's prospective employer. *See* Mem. of Law, Dkt. 34 at 8 (citing Screening Report Cover Letter at 1). Amazon and Whole Foods further reference the Adverse Action Letter, signed by Amazon, which states, "[w]e found it necessary to reject your request to provide services to Amazon on behalf of your employer." Adverse Action Letter at 1. Although those two documents confirm that Amazon and Whole Foods viewed Cornucopia as Franklin's prospective employer—a point Cornucopia does not dispute—they say nothing about whether Amazon and Whole Foods would have been joint employers alongside Cornucopia. To that end, the implication of Amazon and Whole Foods' argument that employees may have only one formal employer is wrong as a matter of law. *See Griffin*, 29 N.Y. 3d at 184 (finding that courts may "confer employer status on an entity that is not the aggrieved party's direct employer" when, *inter alia*, that entity exhibits "a significant level of control"). Accordingly, Amazon and Whole Foods's argument that Cornucopia's status as a prospective employer precludes a finding that they too are prospective employers is unpersuasive.

In short, while he may have a very tough row to hoe on this point at the summary judgment stage, Franklin has pled adequately, although just barely, that Amazon and Whole Foods were prospective employers.[9]

**B. Franklin Has Stated a Claim of Employment Discrimination Under the NYSHRL**

Section 296(15) of NYSHRL makes it unlawful to deny employment to an individual "by reason of his having been convicted of one or more criminal offenses ... when such denial is in violation of the provisions of [Article 23-A] of the N.Y. Correction Law." *See* N.Y. Exec. Law § 296(15). Article 23-A provides, in part, that employment shall not be "denied or acted upon adversely by reason of the individual's having been previously convicted of one or more criminal offenses" unless one of two exceptions applies. N.Y. Corr. Law § 752. When there is a "direct relationship" between the criminal offense and the employment sought or when hiring someone with a criminal background poses an "unreasonable risk" to the public, then prospective employers may deny employment on the basis of an applicant's criminal history. N.Y. Corr. Law § 752.

Courts consider NYSHRL employment discrimination claims using the *McDonnell Douglas* three-part burden shifting framework used in Title VII cases. *See Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 74–75 (2d Cir. 2016) (quoting *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 117, n.2 (2d Cir 2010)). Courts apply this framework to NYSHRL criminal history discrimination claims even though criminal history is not a protected category under Title VII. *See, e.g., Schwarz v. Consol. Edison, Inc.*, 49 Misc. 3d 832, 841 (Sup. Ct. N.Y. Cnty. 2015), *aff'd*, 147 A.D.3d 9 (1st Dep't 2017) (applying the *McDonnell Douglas* framework to a claim of employment discrimination based on criminal history brought under NYSHRL); *McCoy v. People Care Inc.*, 11-CV-2689 RA, 2013 WL 5313433, at *5–6 (S.D.N.Y. Sept. 20, 2013) (same); *Obabueki v. Int'l Bus. Machs. Corp.*, 145 F. Supp. 2d 371, 380–91 (S.D.N.Y. 2001), *aff'd*, 319 F.3d 87 (2d Cir. 2003) (same).

Pursuant to the *McDonnell Douglas* burden shifting framework, a plaintiff must first present a *prima facie* case by establishing (1) that he belongs to a protected class; (2) that he is qualified or competent to perform the job; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 252 (2d Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). The burden then shifts to the defendant employer to proffer a legitimate, nondiscriminatory motive for the adverse action, at which point the burden shifts back to the plaintiff

employee to establish that the proffered reason is pretextual. *Id.* at 251.

**\*5** To survive a motion to dismiss, however, a plaintiff need only plead facts sufficient to establish a *prima facie* case. *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (internal citation omitted). The second and third steps of the *McDonnell Douglas* framework are not considered on a motion to dismiss and are more appropriately considered on a motion for summary judgment or at trial. *Id.* Further, "while a discrimination complaint need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (cleaned up). *See also Yan v. Ziba Mode Inc.*, No. 09-CV-3000, 2016 WL 1276456, at *4 (S.D.N.Y. Mar. 29, 2016) ("The elements of a *prima facie* case are 'an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible.' " (cleaned up)).

Defendants do not appear to contest that Franklin has adequately alleged the first three elements of a *prima facie* case: his criminal history puts him in a protected category; he is qualified to work as a delivery worker; and he suffered an adverse employment action when he was not hired. Defendants assert that he has not adequately alleged the fourth element because he has not alleged facts that "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

**1. Franklin Has Adequately Alleged that the Two Permissible Bases for Employment Discrimination Based on Criminal History Do Not Apply**

NYSHRL does not prohibit consideration of an applicant's criminal history in deciding whether to hire the person, but such consideration is only permissible if a prospective employer can demonstrate that one or both of the Article 23-A exceptions applies. *See* N.Y. Corr. Law § 752 (permitting employers not to hire someone with a criminal background when his or her criminal conviction (1) has a "direct relationship" to the position sought; or (2) if granting employment would pose an "unreasonable risk" to the public). Accordingly, to allege a minimal inference of discriminatory intent, Franklin must adequately allege facts

from which the Court can infer that neither exception applies to him.

Defendants argue that "Franklin only offers his own subjective opinion that his conviction did not have a 'direct relationship' with the job or pose an 'unreasonable risk,' which is insufficient to establish an inference of discrimination." Mem. of Law, Dkt. 34 at 22; *see also id.* at 18 ("At bottom, Franklin's claims boil down to the bare allegations that he has a criminal history and was not hired."); Mem. of Law, Dkt. 43 at 7. [10] The Court disagrees. Franklin has stated a claim, although again just barely, that the two exceptions do not apply to him, nudging his discrimination claim from the conceivable to the plausible. With respect to the first exception, a direct relationship between the conviction and the employment sought, Article 23-A clarifies that a direct relationship "means that the nature of criminal conduct for which the person was convicted has a direct bearing on his *fitness or ability* to perform one or more of the duties or responsibilities necessarily related to the ... job in question." N.Y. Corr. Law § 750(3) (emphasis added). As the position at issue involved driving to deliver groceries, and, as Franklin asserts, he was never convicted of a vehicular offense, the Court finds that Franklin has adequately alleged that there is no direct relationship between his conviction and his fitness or ability to deliver Whole Foods groceries. FAC ¶ 22. Defendants respond that "[t]here is no basis to conclude that a 'vehicular offense' is the *only* type of offense that has a 'direct relationship' with the delivery position ...." Reply, Dkt. 41 at 5–6 (emphasis in original); *see also* Reply, Dkt. 46 at 2–3. [11] But in making this argument, Defendants appear to conflate the "direct relationship" exception with the "unreasonable risk" exception by implying that a past conviction for a crime of violence makes Franklin unfit to deliver groceries. The direct relationship exception focuses on comparing the requirements of the position to the criminal conviction. For example, the New York Court of Appeals found a "direct relationship" between a prior conviction for illegally fixing horse races and a Racing and Wagering Board license. *See Bonacorsa v. Van Lindt*, 71 N.Y.2d 605, 614–15 (1988). Nothing suggests that Franklin's criminal conviction has any bearing on his fitness or ability to deliver groceries. Accordingly, construing the allegations in the complaint in the light most favorable to Franklin, he has pled adequately that this exception does not apply.

**\*6** Franklin has also pled adequately that the second exception, that the employment would involve an unreasonable risk to persons or property, does not apply.

The Court is sympathetic to Defendants' likely position that they do not want a convicted murderer delivering groceries to their customers' homes. But considering the allegations in the complaint in the light most favorable to Franklin, he has adequately alleged that he is rehabilitated and no longer poses a threat to the public. [12] Franklin first contends that "[t]he State of New York determined that [he] did not pose an unreasonable risk to anyone's property, safety, or welfare when it saw fit to parole him, and there is no reason the Whole Foods setting would alter this general conclusion." FAC ¶ 22. Franklin further alleges that individuals familiar with his life since his release from prison could attest to the fact that he is rehabilitated. FAC ¶ 23. Moreover, the Background Report reflects that nearly 25 years have elapsed between the time of the conviction and Franklin's job application, so Franklin is now much older than he was when he was convicted (let alone when he committed the crime), both factors that suggest that he no longer poses the same threat he once did. Background Report at 3; Resp., Dkt. 37 at 22. Taken together, those allegations support the conclusion that Franklin has adequately pled that the public risk exception does not apply to him.

In short, because Franklin has adequately alleged that neither of the Article 23-A exceptions apply, he has adequately alleged facts from which the Court can infer a minimal inference of discriminatory motivation. [13]

### 2. Defendants' Alleged Nondiscriminatory Reason for Failing to Hire Franklin Cannot be Considered on a Motion to Dismiss

Defendants argue that Franklin cannot adequately plead an inference of discrimination because Defendants have a legitimate, nondiscriminatory reason for declining to hire him: he lied on his employment application. Mem. of Law, Dkt. 34 at 17; Mem. of Law, Dkt. 43 at 7–8. [14] Defendants are correct that a legitimate nondiscriminatory reason for an adverse employment action can undermine an employment discrimination claim and that a prospective employee's failure to disclose criminal history is generally considered a legitimate reason for taking an adverse employment action. Mem. of Law, Dkt. 34 at 17 (citing *Kravit v. Delta Air Lines, Inc.*, No. 92-CV-38, 1992 WL 390236, at \*2 (E.D.N.Y. Dec. 4, 1992); *McManamon v. City of N.Y. Dep't of Corrs.*, No. 07-CV-10575, 2009 WL 2972633, at \*6 (S.D.N.Y. Sept. 16, 2009)); Mem. of Law, Dkt. 43 at 1 (same).

**\*7** But alleged legitimate reasons for the adverse employment action cannot be considered on a motion to dismiss. To keep the stages of *McDonnell Douglas* separate and to keep the pleading burden minimal, *see Littlejohn*, 795 F.3d at 313, "any inquiry into any non-discriminatory reasons for a defendant's conduct is reserved for summary judgment or trial," *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209, 216 (E.D.N.Y. 2019); *see also Menaker*, 935 F.3d at 35–36, 36 n.69 (holding that a court cannot simply accept an employer's proffered rationale for adverse employment action on a motion to dismiss because this would not be "drawing all reasonable inferences in the plaintiff's favor"). [15] Accordingly, at this stage of the proceedings, the Court will not consider Defendants' contention that Franklin's alleged lie about his criminal history is a legitimate reason for not hiring him.

Tellingly, the majority of the caselaw Defendants cite in support of their argument that Franklin's lie warrants dismissal of the complaint are summary judgment opinions, making them wholly inapposite to the motion to dismiss before the Court. *See* Mem. of Law, Dkt. 34 at 2, 2–3, 17 n.6 (citing *McManamon*, 2009 WL 2972633, at \*6, \*8–9; *Obabueki*, 145 F. Supp. 2d at 371 (S.D.N.Y. 2001), *aff'd*, 319 F.3d 87 (2d Cir. 2003); *Kravit*, 1992 WL 390236, at \*2; *Godbolt v. Verizon N.Y. Inc.*, No. 09/109611, 2013 WL 361144 (Sup. Ct. N.Y. Cnty. Jan. 22, 2013); *see also* Mem. of Law, Dkt. 43 at 1, 8 (citing the same cases). Accordingly, those cases provide no support for Defendants' contention that the Court should consider their alleged legitimate reason for failing to hire Franklin at the motion to dismiss stage.

Defendants cite three cases where courts considered the employers' alleged legitimate reasons for the adverse employment actions on a motion to dismiss. But those cases are readily distinguishable. In *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 247–51 (E.D.N.Y. 2015), the court found that the plaintiff had not adequately alleged a *prima facie* case of discrimination and referenced the employer's alleged legitimate reason for the adverse employment action as just one more reason to dismiss the case. Franklin, in contrast, has alleged facts that make out a *prima facie* case of employment discrimination. In *Schwarz*, 49 Misc. 3d at 832, the plaintiff alleged that he had been terminated due to a prior criminal conviction for perjury. *Schwarz*, 49 Misc. 3d at 833. But the plaintiff had revealed his conviction on his employment application, and he had nonetheless been hired, diminishing the likelihood that his criminal background played a role

in his firing. *Id.* at 835–36. Here, there is no equivalent evidence in the record. And in *Stinnett v. Delta Air Lines, Inc.*, 18-CV-2704, 2019 WL 1493224, at \*4–10 (E.D.N.Y. Mar. 31, 2019), the court found that the complaint failed to connect the alleged adverse employment action (termination due to drug and alcohol violations) with membership in the alleged protected class (gender and disability). *Stinnett*, 2019 WL 1493224, at \*4–5. In other words, although the nondiscriminatory motive proffered by the defendant was used by the court to support its conclusion, the court granted the motion because the plaintiff could not connect the adverse employment action to membership in the protected class. *Stinnett*, 2019 WL 1493224, at \*7–8. Here, Franklin has stated a claim that the adverse employment action (failure to hire) was related to his protected class (criminal history). Accordingly, because Defendants have cited no relevant case law to support their contention that it is appropriate to consider their alleged legitimate reason for not hiring Franklin on a motion to dismiss, the Court declines to do so.

**\*8** In short, because Franklin has pled a *prima facie* case of discrimination, Defendants' motion to dismiss Franklin's NYSHRL claim is denied.

### C. Franklin Has Stated a Claim of Employment Discrimination Pursuant to the NYCHRL

NYCHRL utilizes a more liberal standard to assess employment discrimination claims than NYSHRL. *See Farmer v. Shake Shack Enters.*, 473 F. Supp. 3d 309,327 (S.D.N.Y. 2020)("The NYCHRL uses the same framework as Title VII and the NYSHRL, but contains, as to some elements, more liberal pleading and proof standards."); *see also Mihalik v. Credit Agricole Cheuvreux N.A., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). Because Franklin has stated a claim pursuant to the more stringent standards of the NYSHRL, he has necessarily stated a claim under NYCHRL.

### II. Franklin Has Adequately Alleged that He Has Standing as to His Procedural Claims

To have standing pursuant to Article III of the Constitution, a plaintiff must adequately allege: (1) a concrete, particularized, actual, or imminent injury-in-fact; (2) a causal connection between the injury and the conduct complained of such that the injury is "fairly traceable to the challenged action of the defendant;" and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision from the Court. *Lujan v. Defends. of Wildlife*, 504 U.S. 555, 560–61 (1992). At the pleading stage, "general

factual allegations of injury resulting from the defendant's conduct may suffice," *Lujan*, 504 U.S. at 561, although the factual allegations must be sufficient to put injury-in-fact into the realm of the plausible, *Harry v. Total Gas & Power N. Am.*, 889 F.3d 104, 110 (2d Cir. 2018).

Franklin alleges that Defendants violated several statutory procedural requirements enacted to safeguard against employment discrimination on the basis of criminal history. The alleged violations include: (1) failure to provide Franklin with an opportunity to submit evidence of rehabilitation and good conduct in violation of the NYCHRL, FAC ¶ 89; Resp., Dkt. 37 at 20; [16] (2) an unlawful inquiry into Franklin's criminal history prior to making him a conditional offer of employment in violation of the NYCHRL, FAC ¶ 88; (3) failure to provide Franklin with a copy of Defendants' analysis of the Article 23-A factors and an opportunity to respond in violation of the NYCHRL, *id.* ¶ 89; and (4) reliance on a consumer report revealing Franklin's criminal background without first providing him with a copy of his rights under Article 23-A in violation of the NY FCRA, *id.* ¶ 94.

**\*9** Defendants argue that Franklin lacks standing to assert those "bare procedural violations." *See* Mem. of Law, Dkt. 34 at 19–20; Mem. of Law, Dkt. 43 at 9. But a plaintiff has standing to assert a procedural violation when she alleges a concrete interest affected by the violation of that procedural right. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) ("[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation— a procedural right *in vacuo*—is insufficient to create Article III standing."). Here, there is no question that Franklin has alleged violations of procedural interests tied to his concrete interest of participating in an employment application process that is free from discrimination based on criminal history. As discussed *infra*, Franklin has stated a claim of employment discrimination based on his criminal history. At this stage of the proceedings, that concrete interest is enough to confer standing over the alleged procedural violations. [17]

The existence of a clear concrete interest is what makes this case distinguishable from those cases where courts find that the plaintiffs lack standing over bare procedural violations of statutes. For example, in *TransUnion*, the Supreme Court

considered whether consumers whose credits reports were misleading had standing to sue the credit reporting agency. *Trans Union*, 141 S. Ct. at 2200. The Court found that consumers whose credit files were disseminated to third-party businesses had standing to sue, while those whose files were not disseminated lacked standing. *Id.* The Court explained that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *Id.* at 2210. [18] But that situation is far from what is present here. Franklin has alleged that Defendants' failure to adhere to the required procedures has facilitated Defendants' discrimination against him based on his criminal history. *See, e.g.*, FAC ¶¶ 84, 95; Resp., Dkt. 37 at 21. Accordingly, Franklin is not alleging bare procedural violations wholly untethered to a concrete injury.

With respect to causation, Defendants argue that Franklin has failed to connect the injury-in-fact with Defendants' conduct. Mem. of Law, Dkt. 34 at 20–21, 25; Mem. of Law, Dkt. 43 at 10–11, 14. Defendants, however, focus on only one of the concrete injuries alleged by Franklin: that he was not hired. [19] Although it is true that Franklin has not alleged adequately that he would have been hired had the hiring process complied fully with Article 23-A, he has plausibly alleged that was denied the opportunity to participate in a fully compliant Article 23-A process. Moreover, the Court finds that injury is plausibly connected to Defendants' actions because Defendants allegedly engaged in the discriminatory process and allegedly failed to comply fully with Article 23-A. Accordingly, Franklin has adequately alleged that the injury is "fairly traceable to the challenged action of the defendant[s]." *Lujan*, 504 U.S. at 560–61 (1992).

**\*10** In short, Plaintiff has standing to pursue his procedural claims.

### CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is DENIED.

The Court will refer the parties to the Court-annexed Mediation Program by separate order.

The Clerk of Court is respectfully directed to terminate the open motions at docket entries 33 and 42.

**SO ORDERED.**

**All Citations**

Slip Copy, 2022 WL 256460

## Footnotes

1       The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A). The purported damages exceed $5,000,000 and Franklin is a citizen of New York while two of the Defendants, Amazon and Whole Foods, are citizens of other states. *See* First Amended Complaint ("FAC"), Dkt. 24 ¶¶ 64–66. The remaining Defendant, Cornucopia, is a citizen of New York and two other states. *See* Letter, Dkt. 48. 28 U.S.C. § 1332(d)(4) requires a court to decline to exercise jurisdiction when more than two-thirds of the members of the proposed class action are citizens of the state in which the action was originally filed and at least one defendant from whom significant relief is sought and whose alleged conduct forms a significant basis for the claims asserted is a citizen of the state in which the action was originally filed. Given that this action concerns activities in New York state and Cornucopia is a citizen of New York, the Court ordered Plaintiff to show cause why the case should not be dismissed without prejudice for lack of subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(4). *See* Order, Dkt. 47.

Upon review of the parties' filings, the Court is persuaded that it has subject-matter jurisdiction over this matter because Cornucopia is not a Defendant "from whom significant relief is sought by members of the plaintiff class." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa). In the FAC, Franklin defines the proposed class as all individuals applying for employment with any of the Defendants, regardless of whether they applied via Cornucopia. *See* FAC ¶¶ 69–71. Amazon and Whole Foods are large employers in New York City and New York state, especially when compared to the numbers of employees hired by Cornucopia. *See* Letter Resp., Dkt. 50 at 4; Letter Resp., Dkt. 51 at 4. Members of the class who applied directly to Amazon or Whole Foods or who applied via other vendors would have no claim against Cornucopia. Accordingly, because only a small portion of the class seeks relief from Cornucopia, the exception in 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa) does not apply to this case. *See Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 156 (3d Cir. 2009) ("In relating the local defendant's alleged conduct to all the claims asserted in the action, the significant basis provision effectively calls for comparing the local defendant's alleged conduct to the alleged conduct of all the Defendants."); *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 528 (S.D.N.Y. 2008) ("[C]ourts have generally required that the local defendant's conduct must be significant in relation to the conduct alleged against other defendants in the complaint, and that the relief sought against that defendant is a significant portion of the entire relief sought by the class." (cleaned up)).

2       Both the NYSHRL and the NYCHRL prohibit discrimination in hiring based on an applicant's criminal history, and both statutes incorporate the requirements of Article 23-A of the N.Y. Corrections Law into their non-discrimination provisions. *See* N.Y. Exec. Law § 296(15); N.Y.C. Admin. Code § 8-107(10). Article 23-A of the New York Corrections Law prohibits discrimination in hiring based on a prospective employee's criminal history, except in certain prescribed circumstances. N.Y. Corr. Law §§ 750–755. Employers may elect not to hire someone with a criminal history (1) when his or her criminal conviction has a "direct relationship" to the position sought; or (2) if hiring the ex-offender would pose an "unreasonable risk" to the public. N.Y. Corr. Law § 752. To determine whether the exceptions apply, Article 23-A requires prospective employers to consider eight factors: "(a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses; (b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person; (c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his

fitness or ability to perform one or more such duties or responsibilities; (d) The time which has elapsed since the occurrence of the criminal offense or offenses; (e) The age of the person at the time of occurrence of the criminal offense or offenses; (f) The seriousness of the offense or offenses; (g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct; (h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public." N.Y. Corr. Law § 753.

Additionally, to ensure that an applicant's criminal history does not cloud the employer's initial hiring decision, 2015 amendments to the NYCHRL require prospective employers to offer an applicant a position conditionally before asking about the applicant's criminal background. Fair Chance Act, N.Y.C. Local Law No. 63 (2015). The amendments further require that before a prospective employer may revoke a conditional offer because of an applicant's criminal history, the employer must provide the applicant with its analysis of the Article 23-A factors and give the applicant an opportunity to respond. *Id.*

3    Amazon and Whole Foods filed a joint motion to dismiss, *see* Notice of Mot., Dkt. 33, and Cornucopia filed its own motion, *see* Notice of Mot., Dkt. 42. The two sets of briefs are mostly duplicative, although unlike Amazon and Whole Foods, Cornucopia does not deny that it was Franklin's prospective employer.

4    NYSHRL was amended, effective October 11, 2019, to cover persons who are not intended to be employees, such as independent contractors. N.Y. Exec. Law § 296-d. NYCHRL was amended, effective January 2020, so that it also now covers independent contractors. N.Y.C. Admin. Code § 8-107(23). Neither amendment appears to apply retroactively. *Smith v. Calypso Charter Cruises Inc.*, No. 19-CV-7076, 2021 WL 4084182, at *7, *7 n.5 (S.D.N.Y. Sept. 8, 2021).

5    Cornucopia does not dispute that Plaintiff has adequately alleged that it was Franklin's prospective employer. Mem. of Law, Dkt. 43; *see also* FAC ¶ 3.

6    There is no special test to determine whether a defendant is a prospective employer; instead, in failure to hire cases, courts consider whether a defendant is a prospective employer by applying the tests used to determine employer status. *See, e.g., Chau v. Donovan*, 357 F. Supp. 3d 276, 284–86 (S.D.N.Y. 2019) (applying the employer tests to the prospective employment context).

7    The motion to dismiss on behalf of Whole Foods and Amazon made no effort to separate the factual allegations against Whole Foods from those against Amazon. Had it done so, the Court might have dismissed Whole Foods, as to which the factual allegations in the complaint are particularly thin.

8    The letter informing Franklin that he would not be hired, which was signed by Amazon, stated: "This decision was based, in whole or in part, on information contained in a consumer report made, at our request ...". *See* Adverse Action Letter, Dkt. 24-2 at 1.

9    Franklin alleges that "[e]ach Defendant violated NYSHRL either as Plaintiff's prospective employer or by aiding, abetting, inciting, compelling, or coercing Plaintiff's prospective employer to violate NYSHRL ...." FAC ¶ 25. Franklin makes the same assertion with respect to claims brought pursuant to NYCHRL. *Id.* ¶ 46. Because the Court finds that Franklin has adequately pled that all three Defendants were his prospective employers, the Court does not consider whether Franklin has stated a claim pursuant to an aiding and abetting theory. Nothing in this opinion precludes Franklin from arguing that Defendants aided and abetted violations of the statutes at a later stage of the proceedings.

10    As a threshold matter, Amazon has conceded that Franklin's criminal history—as opposed to some other reason—was at least in part the basis for its decision. The Adverse Action Letter states that the decision not to hire Franklin "was based, in whole or in part, on information contained in a consumer report [detailing his criminal history]." Adverse Action Letter at 1; *see also* Resp., Dkt. 45 at 10–11. That implies that Franklin's

Franklin v. Whole Foods Market Group, Inc., Slip Copy (2023)

criminal history played a role in the adverse employment decision. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) ("An inference of discrimination can arise from circumstances including, but not limited to ... the sequence of events leading to the plaintiff's discharge." (internal quotation marks omitted)).

11      The Court agrees that there may well be other offenses that are directly related to one's fitness or ability to deliver groceries (theft, for example, may be directly related), but there is no indication that Franklin has any conviction other than for murder, and the Court fails to see how a conviction for murder is directly, or even indirectly, related to one's fitness or ability to deliver groceries.

12      One of the purposes of Article 23-A is to alert prospective employers that those who have been released from prison have "paid their debt to society" and can successfully reenter the workforce. *See Acosta v. New York City Dep't of Educ.*, 16 N.Y.3d 309, 320 (2011). Two of the eight factors that employers must weigh when considering whether to deny a person employment based on his criminal history focus on whether the prospective employee has been rehabilitated, including "[t]he time which has elapsed since the occurrence of the criminal offense or offenses" and "[t]he age of the person at the time of occurrence of the criminal offense or offenses." N.Y. Corr. Law § 753.

13      Additionally, Franklin's allegations that Defendants did not follow the required statutory procedures in their hiring process further supports the conclusion that Franklin has adequately alleged an inference of discrimination. Franklin contends that Defendants, in violation of NYCHRL and NY FCRA, unlawfully (1) inquired into his criminal background prior to conditionally offering him the job; (2) failed to provide him a copy of their analysis of the Article 23-A factors or to give him an opportunity to respond; (3) failed to solicit evidence of rehabilitation; and (4) did not provide him with a copy of his Article 23-A rights. *See* FAC ¶¶ 83, 88–89, 94. In *Doe v. Columbia University*, the Second Circuit held that the failure of Columbia University to follow the required policies and procedures when investigating allegations of sexual assault supported an inference that the school was "motivated by bias." *Doe v. Columbia Univ.*, 831 F.3d 46, 56-57 (2d Cir. 2016). *See also Menaker v. Hofstra Univ.*, 935 F.3d 20, 27 (2d Cir. 2019) (reaching a similar conclusion). Accordingly, Franklin's allegations that Defendants violated relevant statutory procedures further support the conclusion that he has adequately pled an inference of discrimination on the part of Defendants.

14      Defendants contend that Franklin responded "no" when asked whether he had been convicted of a felony or released from prison following a felony conviction in the past seven years. Mem. of Law, Dkt. 34 at 4–5 (citing Background Report, Dkt. 35-1 at 6–7). Franklin had, in fact, been released from prison the previous year (in 2018) after serving a sentence for a felony. Background Report at 3; Mem. of Law, Dkt. 34 at 4–5, 17. In the FAC, Franklin states that he "does not recall" answering no to the question about his criminal background, but that, even if he had, it was "merely to prevent the peremptory dismissal of his application." FAC ¶¶ 42, 43.

15      Defendants belabor the point that "New York law is clear that denying employment based on an applicant's failure to disclose his criminal record does not implicate Article 23-A." Mem. of Law, Dkt. 34 at 17 (citing *Smith v. Kingsboro Psychiatric Ctr.*, 35 A.D.3d 751, 752 (2d Dep't 2006); N.Y. Corr. Law § 751 (internal quotation marks omitted)); Mem. of Law, Dkt. 43 at 8 (same). The Court does not disagree; if Defendants can withstand the *McDonnell Douglas* test, they can prevail on summary judgment or at trial. But "[i]t is not the court's function in ruling on a motion to dismiss for insufficiency of the complaint to decide which was the defendant's true motivation." *Doe*, 831 F.3d at 56 n.10 (2d Cir. 2016).

16      Franklin also alleges that Defendants failed to provide him "with an opportunity to submit evidence" of rehabilitation before rejecting his job application in violation of the NYSHRL. FAC ¶ 83. Article 23-A, as incorporated by NYSHRL, requires an employer to consider "information produced ... in regard to ... rehabilitation and good conduct." N.Y. Corr. Law § 753(1)(g). Courts have found employers to be in violation of NYSHRL for failing to consider evidence presented by the applicant of rehabilitation and good conduct. *See, e.g., Acosta*, 16 N.Y.3d at 319; *Tinsley v. Taxi & Limousine Comm'n*, 58 Misc. 3d 941, 949–50 (Sup. Ct.

N.Y. Cnty. 2017). But those cases say nothing to indicate that employers are required to solicit evidence from prospective employees. Franklin cites to no case—and the Court is aware of none—that finds a prospective employer liable for failing affirmatively to provide an opportunity to prospective employees to submit such information. Because NYSHRL does not require employers to provide prospective employees an opportunity to submit evidence of rehabilitation, to the extent Franklin intended separately to plead a violation of NYSHRL on that basis and to the extent Defendants moved to dismiss that claim, that portion of their motion to dismiss is granted.

17    Defendants do not move to dismiss Franklin's allegations of procedural violations for failure to state a claim. Accordingly, the Court need not consider whether Franklin has stated a claim as to each of the procedural violations he asserts. Because the concrete interest at issue is Franklin's interest in being free from discrimination, whether Franklin has standing over his procedural claims rises and falls with his underlying discrimination claim.

18    *See also* Resp., Dkt. 37 at 23–25 (collecting cases with similar holdings).

19    Franklin alleges that had the procedures been followed, he would have been hired. *See* FAC ¶¶ 7, 24, 41, 56. The Court agrees with Defendants that Franklin has not adequately alleged a connection between the procedural violations on their own and the fact that he was not hired. For example, with respect to Franklin's claim that Defendants failed to provide him with a copy of his Article 23-A rights in violation of the FCRA, connecting that lapse to him not being hired would require factual allegations (a) that Franklin would have read the materials provided to him; (b) that he would have acted on his newly acquired knowledge by affirmatively submitting evidence of his rehabilitation in a timely manner; and (c) that Defendants would have been persuaded by that evidence and would not have rejected his application pursuant to one of the two Article 23-A exceptions. Franklin has not alleged facts to support those contentions. *See Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 148 (2d Cir. 2011) (requiring factual support for each step in the causal chain to nudge an alleged injury-in-fact from the conceivable to the plausible, such that the injury is not merely "speculative"); *Baur v. Veneman*, 352 F.3d 625, 630 (2d Cir. 2003) (finding that "a series of hypothetical events" was not sufficient to confer standing").

But when the allegations are viewed in the light most favorable to Franklin, he has alleged a concrete interest in participating in a hiring process that is free from discrimination based on criminal history. And given that he has stated a claim as to the underlying discrimination claim, he has pled enough at this stage of the litigation to support his claim that he has standing to complain about the procedural violations as well.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.