# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUSTIN RINDOS,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>PARTNERS GROUP (USA), INC.; JANE DOE I-V (these names being fictitious as their present identities are unknown); JOHN DOE I-V (these names being fictitious as their present identities are unknown); XYZ CORPORATION I-V (these names being fictitious as their present identities are unknown),<br><br>　　　　　　Defendants. | No. 2:22-cv-05187-WJM-JSA<br><br>Motion Date: July 3, 2023 |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ................................................................................................................... 2

   A. PLAINTIFF'S AMENDED ALLEGATIONS DO NOT SALVAGE HIS DEFICIENT CLAIM UNDER THE FAIR CHANCE ACT. .......................................................... 2

     1. Plaintiff's Arguments That the Company Failed to "Conduct a Complete and Thorough Fair Chance Analysis" are Irrelevant Because the Company's Decision to Terminate Plaintiff's Employment "Fall[s] Squarely Under § 10(g)" of the FCA. ............................................. 2

     2. Plaintiff's Intentional Omission Triggers the Exception in § 10(g). .................................. 7

     3. Plaintiff's Discriminatory Motive Argument Fails Because the Alleged Discriminatory Rationale—a Violation of the FCA—is Not Actionable. ............................................. 9

   B. PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS FAIL. .............................................. 10

     1. Plaintiff's Attempt to Manufacture Temporal Proximity to Save His Discrimination Claims Should be Rejected. ................................................................. 10

     2. Plaintiff's "Continuing Duty to Accommodate" Theory is One of His Own Creation, and His Failure to Accommodate Claim Remains Subject to Dismissal for the Reasons Previously Identified by the Court. ......................................................... 12

   C. THE OPPOSITION CONCEDES PLAINTIFF'S FMLA INTERFERENCE IS TO BE DISMISSED AND DOES NOTHING TO SAVE HIS RETALIATION CLAIM................... 14

III. CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bartos v. MHM Corr. Servs.*,
   454 F. App'x 74 (3d Cir. 2011) ...................................................................................11

*Bickhardt v. Ratner*,
   871 F. Supp. 613 (S.D.N.Y. 1994)..................................................................................7

*Colson v. Cablevision MFR, Inc.*,
   2008 U.S. Dist. LEXIS 18488 (D.N.J. Mar. 11, 2008).................................................11

*Columbus LTACH Mgmt., LLC v. Quantum LTACH Holdings, LLC*,
   2019 U.S. Dist. LEXIS 89612 (D.N.J. May 29, 2019)...................................................6

*Criado v. IBM Corp.*,
   145 F.3d 437 (1st Cir. 1998)..........................................................................................13

*Franklin v. Whole Foods Mkt. Grp., Inc.*,
   2022 U.S. Dist. LEXIS 14594 (S.D.N.Y. Jan. 26, 2022) ..............................................10

*Genetec, Inc. v. Pros, Inc.*,
   2021 U.S. Dist. LEXIS 180001 (S.D.N.Y. Sept. 21, 2021).............................................7

*Kaufman v. Cohen*,
   307 A.D.2d 113 (N.Y. App. Div. 1st Dept. 2003)..........................................................7

*Lafferty v. Sherwin-Williams Co.*,
   2018 U.S. Dist. LEXIS 141549 (D.N.J. Aug. 21, 2018)...............................................14

*Little v. Doe*,
   2010 U.S. Dist. LEXIS 102472 (D.N.J. Sept. 28, 2010) ..............................................11

*Matter of Smith v. Kingsboro Psychiatric Ctr. (KPC)*,
   35 A.D.3d 751 (App. Div. 2nd Dept. 2006) ...................................................................8

*Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*,
   460 F. Supp. 3d 481 (S.D.N.Y. 2020)..........................................................................7, 8

*Roper v. Luzerne Cnty.*,
   2023 U.S. Dist. LEXIS 45853 (M.D. Pa. Mar. 17, 2023).............................................14

*Santora v. Red Clay Consol. Sch. Dist.*,
   580 F. App'x 59 (3d Cir. 2014) ....................................................................................11

*Schwarz v. Consolidated Edison, Inc.*,
    49 Misc. 3d 832 (N.Y. Cnty. 2015) ..................................................................8

*Tighe v. Arconic Inc.*,
    2021 U.S. Dist. LEXIS 101371 (D.N.J. May 28, 2021) ..........................................14

*Williams v. AT&T Mobility Sens. LLC*,
    847 F.3d 384 (6th Cir. 2017) ..................................................................13

**Statutes**

FMLA ................................................................................................ *passim*

New York State Corrections Law Art. 23-A ...............................................................8, 9

**Other Authorities**

NYC Admin. Code 8-107 § 10(g).................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) .................................................................1, 6

## I. INTRODUCTION[1]

Plaintiff's Opposition to the Company's Motion (ECF No. 19) ("Opp.") fails to identify any new allegations in the Amended Complaint that would undermine the Court's prior decision dismissing Plaintiff's claims. *See* Opinion (ECF No. 11) ("Opinion"). Despite the absence of any allegations that remedy the clear pleading deficiencies previously identified by the Court, the Opposition indirectly quarrels with the Court's well-reasoned conclusions. Without saying as much, the Opposition claims the Court got it wrong in the first instance. It did not, and the Court should decline Plaintiff's invitation to re-litigate the issues it has already correctly decided. The sole question for the Court at this juncture is whether Plaintiff's amended allegations materially differ from his original allegations in such a way that the claims asserted, unlike their predecessor versions in the original Complaint, now survive a motion under Rule 12(b)(6). They do not.

Although the allegations concerning Plaintiff's claim under the FCA remain substantively identical to the Complaint, Plaintiff attempts to rescue such a claim by levelling a variety of novel challenges to the sufficiency of Partners Group's FCA analysis. But, in so doing, Plaintiff casually ignores one crucial fact the Court has already identified—Plaintiff's failure to disclose his arrest places the Company's action of terminating him "squarely under § 10(g)," a "carve out [] exception" that gives the Company authority to take such an adverse employment action. *See* Opinion at 7. Thus, whether the Company performed an adequate FCA analysis—which the Court has already determined it did, *id.* at 7—is irrelevant. As to his disability discrimination claim under New York law, the Opposition asserts only temporal proximity to claim that an inference of discrimination exists. Yet, Plaintiff concedes that a "gap[] of two months or less" between the disclosure and the adverse action is necessary to create such an inference. The Amended

---

[1] Unless otherwise indicated, all designations are the same as set forth in the Company's Memorandum of Law in Support of its Motion to Dismiss (ECF No. 17) (the "Motion").

Complaint makes clear that such gap is nearly *five months*, a far cry from the two months Plaintiff states is necessary. The Opposition likewise fails to move the needle on Plaintiff's failure to accommodate claim, which remains deficient because the Amended Complaint, like its predecessor, confirms that Plaintiff was granted his requested accommodation (to the extent his requests for leave are even cognizable under the law, which they are not, as the Court has already recognized). Finally, as to his FMLA claims, the Opposition fails to address whatsoever why Plaintiff's interference claim—the only claim the Court did not previously dismiss—should proceed, thereby conceding it should be dismissed now. Concerning Plaintiff's FMLA retaliation claim, Plaintiff again attempts to lean on temporal proximity to create an inference of retaliatory motive, but for the same reasons, Plaintiff's attempt to manifest such proximity falls flat.

The Court should dismiss the Amended Complaint with prejudice. The Amended Complaint, like its predecessor, levels allegations that confirm the Company was well within its rights to terminate Plaintiff's employment based on his deliberate failure to disclose a felony arrest for twice strangling his spouse in front of his minor child in violation of Company policy.

## II.   ARGUMENT

### A.   PLAINTIFF'S AMENDED ALLEGATIONS DO NOT SALVAGE HIS DEFICIENT CLAIM UNDER THE FAIR CHANCE ACT.

**1. Plaintiff's Arguments That the Company Failed to "Conduct a Complete and Thorough Fair Chance Analysis" are Irrelevant Because the Company's Decision to Terminate Plaintiff's Employment "Fall[s] Squarely Under § 10(g)" of the FCA.**

Plaintiff's Opposition spills substantial ink asserting that his FCA claim is not subject to dismissal because the Company "failed to conduct a complete and thorough Fair Chance analysis." *See* Opp. at 11–16. But, as this Court already held, the requirement imposed on an employer to conduct a FCA analysis is set aside where an employee makes "intentional misrepresentations regarding their arrest or conviction history." Opinion at 7. As the Court previously noted and

2

Plaintiff does not dispute, the FCA "carve[s] out an exception allowing employers to take [] adverse actions against an employee 'who is found to have made intentional misrepresentations regarding their arrest or conviction history . . . .'" *Id.* (citing NYC Admin. Code 8-107 § 10(g)). It was on this basis that the Court previously (and properly) dismissed Plaintiff's FCA claim, concluding that the Company's actions "fall squarely under § 10(g)." *Id.* This holding still rings true, even in the face of Plaintiff's Amended Complaint given that it is substantively identical to his original pleading and again admits that Plaintiff had multiple conversations with the Company following his arrest, but failed to disclose the arrest. *Compare* Compl. (ECF No. 1) at ¶¶ 10–14 *with* Am. Compl. at ¶¶ 10–14. Thus, as before, the Court need not inquire further—the allegations in the Amended Complaint, even when affording Plaintiff all favorable inferences, confirm that Plaintiff failed to disclose his arrest as required by Company policy, which places the Company's decision "squarely under § 10(g)." *See* Opinion at 7.

Because the Company was entitled to terminate Plaintiff's employment under § 10(g), *id.*, Plaintiff's arguments concerning the sufficiency of any FCA analysis are irrelevant. The Company need not demonstrate from Plaintiff's allegations that one or both of the Article 23-A exceptions to employment discrimination apply. *See* Opp. at 11–14 (arguing the irrelevant question of whether the Company has established either a "direct relationship between the alleged or convicted conduct and the job" or unreasonable risk to safety). Nor was the Company required to allow Plaintiff to submit evidence of rehabilitation or share a written copy of "their complete Fair Chance Analysis," *id.* at 11, 14–15—although the Company nonetheless did do those things, as the Court has already noted. *See* Opinion at 7 ("Defendant provided Plaintiff with a written letter detailing his termination, outlining the Article 23-A factors considered, and affording Plaintiff an opportunity to provide additional information before his termination was to be finalized."). The

3

Opposition ultimately ignores the fact that an intentional misrepresentation triggers the exception in § 10(g) and mounts no argument as to why, if § 10(g) does apply—as the Court has held it does—the requirements Plaintiff relies on do not fall by the wayside. Because he cannot. Once Plaintiff made the decision to intentionally misrepresent his arrest history, in direct violation of Company policy, the Company was well within its rights to terminate his employment.

Nor does the Company's failure to specifically state that it was terminating Plaintiff's employment for "intentional misrepresentation" bring the Company's decision outside the purview of § 10(g). *See* Opp. at 15–16. While true that the Company's FCA letter to Plaintiff does not contain the phrase "intentional misrepresentation," nothing in the FCA requires an employer to use this specific language for § 10(g) to apply. In fact, the letter offered *more clarity* beyond simply stating that Plaintiff "intentionally misrepresented" his arrest. *See* Am. Compl. at ¶ 37; *see also* May 18, 2022 Letter (ECF No. 6-4) (noting that the Company was terminating Plaintiff's employment because of his failure to disclose the arrest in violation of Section 6.2 of the Company's Handbook). Plaintiff's attempt to fault the Company for not specifically "indicat[ing] that [Plaintiff] made any intentional misrepresentations" in its termination letter is a red herring. Specifying the intentional misrepresentation for which Plaintiff was being terminated rather than using the general, descriptive term is not a flaw in the Company's position. It is a strength.

Even if Plaintiff's admission that he intentionally misrepresented his arrest record to the Company were somehow now insufficient to place his claim outside the ambit of § 10(g), Plaintiff's arguments that the Company failed to comply with the FCA are without merit.

Plaintiff's claim that Partners Group failed to comply with the FCA by "not allow[ing] Plaintiff to submit evidence of good conduct and rehabilitation," and "failing to disclose a written copy of the inquiry [] conducted" has already been addressed—and rejected—by this Court. *See*

4

Opinion at 7. Plaintiff has added *no allegations* to his Amended Complaint that would undermine the Court's prior finding in this respect. Indeed, the allegations relevant to the Court's previous holding have not changed. *Compare* Compl. at ¶¶ 31–37, 39 *with* Am. Compl. at ¶¶ 32, 34–39, 42.

Plaintiff's assertion that the Company's reliance on his arrest "constitutes a *per se* violation of the [FCA]" because it was a decision in "violation of the FCA's provision on non-convictions" fails. Opp. at 15–16. Again, Plaintiff's allegations in this respect have not changed. *Compare* Compl. at ¶¶ 31–37, 39 *with* Am. Compl. at ¶¶ 32, 34–39, 42. Thus, it remains true that the fact Plaintiff's arrest *ultimately* resulted in a non-conviction is irrelevant because the Company was well within its right to terminate his employment pursuant to § 10(g) and his clear violation of Company policy. Moreover, Plaintiff's argument crumbles under mild pressure of basic logic. The Amended Complaint confirms that at the time of Plaintiff's termination, Plaintiff's criminal charges had *not yet* been dismissed. Plaintiff alleges that he informed the Company on May 19, 2022 that he was *accepted into* a Pre-Trial Intervention (PTI) program, that the charges would "*likely* be dismissed," and that a non-conviction would only occur "*at the completion of the [PTI] program*." Am. Compl. at ¶¶ 24, 32 (emphasis added); *see also* Compl. at ¶ 31. That Plaintiff *might* complete the PTI program in the future cannot support the claim that the Company made the decision to terminate Plaintiff on the basis of a non-conviction, as such a non-conviction *had not yet occurred* and would only occur if Plaintiff "satisfactorily completed" the program.[2] *Id.*

---

[2] The revisions to Plaintiff's pleading strongly indicate that Plaintiff only recently completed the PTI program. In his Complaint, Plaintiff alleged that "if [he] satisfactorily completes the PTI program" the charges pending against him would be dropped. Compl. at ¶ 28. Contrast this with the amended version of that same allegation—switching to the past tense, Plaintiff alleges that "[he] *subsequently completed* the PTI program." Am. Compl. at ¶ 29. Thus, it appears that Plaintiff completed the PTI program sometime in the eight-month period between when he filed his Complaint on August 24, 2022 and the Amended Complaint on April 25, 2023, confirming that a non-conviction was not reached until well after Plaintiff's termination and, therefore, could not have been a consideration in deciding to terminate his employment in May 2022.

The sole amendment through which Plaintiff attempts to salvage his FCA claim—parroting the conclusory statement that he did not "make any intentional misrepresentations regarding his arrest or conviction history," Am. Compl. ¶¶ 15, 23, 33, and 47—does not compel a new and different result. *See* Opp. at 16–17. To be clear, this allegation confirms only that Plaintiff did not make any intentional misrepresentations *after* the Company had confronted him with his arrest. *See* Am. Compl. at ¶ 15 (detailing the Jan. 23, 2022 conversation when the Company "inform[ed] him that the Company was made aware of the arrest"); *see also id.* at ¶¶ 23, 32–33 (detailing subsequent conversations on Jan. 28, 2022 and May 19, 2022). Plaintiff's alleged candor once the Company had independently learned of his arrest and confronted him with it is immaterial. The inquiry is not whether Plaintiff made intentional misrepresentations *after* the Company confronted him; rather, the allegations on which this Court previously determined that § 10(g)'s exception applied were that despite speaking with the Company multiple times after his arrest, he failed to disclose it (in violation of Company policy). *See* Opinion at 7. Plaintiff's addition is, therefore, a swing and miss. Because Plaintiff's allegations are no different, and continue to confirm that Plaintiff failed to disclose his arrest, the Company's actions of terminating his employment still "fall squarely under § 10(g)." *See id.* Dismissal is once again required, this time with prejudice.[3]

---

[3] Dismissal with prejudice is warranted at this juncture. Plaintiff has twice attempted to plead facts that would allow his FCA claim—as well his other claims discussed *infra*—to survive a motion to dismiss under Rule 12(b)(6) and has failed to do so. Accordingly, it is clear that any future amendment of this claim would be futile and dismissal with prejudice is appropriate. *See Columbus LTACH Mgmt., LLC v. Quantum LTACH Holdings, LLC*, 2019 U.S. Dist. LEXIS 89612, at *10 (D.N.J. May 29, 2019) (citing *Alston v. Parker*, 363 F.3d 229, 235–36 (3d Cir. 2004) (dismissing claims with prejudice after providing plaintiff with an opportunity to amend, noting that the failure to cure the deficiencies previously identified in the court's prior rulings demonstrated futility). As confirmation of this fact, Plaintiff's Opposition does not request leave to amend in the event the Court grants the Company's Motion (as it should). The admissions found in both Plaintiff's original Complaint and Amended Complaint confirm that the deficiencies of his claims are incurable. Given that the exception of § 10(g) applies, as the held in the first instance, there is no set of facts under which Plaintiff could assert a claim under the FCA. *See* Opinion at 7. Further amendment is unnecessary and should not be granted in light of this futility.

## 2. Plaintiff's Intentional Omission Triggers the Exception in § 10(g).

Plaintiff's assertion that his deliberate omission of the fact that he had been arrested for strangling his spouse in front of his minor child does not amount to an "intentional misrepresentation" holds no water. *See* Opp. at 17. The Court has already rejected this argument in holding that the Company's decision to terminate "fall[s] squarely under § 10(g)" and, is therefore, not actionable under the FCA. *See* Opinion at 7. Nonetheless, it merits brief discussion.

Plaintiff chides the Company for relying on persuasive authority to support the general premise that a deliberate omission is tantamount to an intentional misrepresentation, claiming that such authority has "no relevance or applicability to the instant discrimination claim." *See* Opp. at 17. And yet, Plaintiff fails to supply any authority to support his contrary notion that omissions cannot qualify as "intentional misrepresentation" under the FCA. *See id.* The absence of such authority in the Opposition is the result of the fact that such a position is contrary to black letter legal principles relating to misrepresentation. It is largely accepted that a deliberate omission is commensurate with misrepresentation. *See, e.g.*, *Genetec, Inc. v. Pros, Inc.*, 2021 U.S. Dist. LEXIS 180001 (S.D.N.Y. Sept. 21, 2021) (to state a claim for intentional misrepresentation under New York law, a plaintiff must allege "a material misrepresentation *or omission* of fact" (emphasis added)); *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 494 (S.D.N.Y. 2020) (allowing fraud claims based on misrepresentation by omission); *Bickhardt v. Ratner*, 871 F. Supp. 613, 618 (S.D.N.Y. 1994) (holding that "[c]oncealment with intent to defraud of facts which one is duty-bound in honesty to disclose is of the same legal effect and significance as affirmative misrepresentations"); *Kaufman v. Cohen*, 307 A.D.2d 113, 119–20 (N.Y. App. Div. 1st Dept. 2003) (noting that an action for fraud may rest on an "affirmative misrepresentation" or,

7

equally, "on acts of concealment where the defendant had a duty to disclose material information").[4] "Intentional misrepresentation" as the phrase is used in the FCA is no different.

Indeed, the New York State Corrections Law Art. 23-A, §§ 751 *et seq.*, on which NYC Administrative Code 8-107 § 10 is predicated,[5] contains a nearly identical carve out for "intentional misrepresentation." *See* New York State Corrections Law Art. 23-A, § 751. Courts interpreting New York's Corrections Law have held that an adverse employment action based on a failure to disclose—*i.e.*, omission—is not actionable. For instance, in *Matter of Smith v. Kingsboro Psychiatric Ctr. (KPC)*, 35 A.D.3d 751, 752 (App. Div. 2nd Dept. 2006), an employee applied for a job, but failed to disclose criminal convictions on his application. *Id.* When the employer discovered the omission, it terminated his employment. *Id.* In the suit alleging a violation of § 752, the trial court dismissed and the appellate court affirmed on the grounds that "termination of his employment based upon his failure to disclose his criminal record completely and truthfully does not implicate [§ 752]." *Id.* (citing *Stewart v. Civil Service Com.*, 84 A.D.2d 491, 494 (N.Y. App. 1st 1982) (holding that "deliberate concealment" of conviction history was

---

[4] The concept of fraud by omission is generally predicated on the existence of a duty to disclose. *See, e.g.*, *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 494 (S.D.N.Y. 2020) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)) (rejecting argument that defendant's omission was not actionable for want of a duty to speak and identifying circumstances where a party is obligated to speak in the context of a business transaction). Both NYC Administrative Code 8-107 § 10(g) and the Company's Handbook clearly impose a duty on Plaintiff to disclose his arrest. *See* NYC Administrative Code 8-107 § 10(g) (providing that a an employee's "failure to divulge" their arrest is permissible where the employee "may not be required to divulge, as provided in subdivision 16 of section 296 of article 15 of the executive law and in subdivision 11 of this section"); Company Handbook § 6.2, Exhibit A to Motion (ECF No. 17-3) (requiring disclosure of any arrest within seven (7) days); *see also* Am. Compl. at ¶ 39.

[5] *See Schwarz v. Consolidated Edison, Inc.*, 49 Misc. 3d 832, 838 (N.Y. Cnty. 2015) ("New York City Administrative Code 8-107(10) expressly incorporates, and is predicated upon, the Correction Law. If there is no violation of the Correction Law, there is no violation of the New York City Administrative Code"). NYC Administrative Code 8-107 § 10 mirrors the requirements of § 752 for taking adverse employment actions against employees based on their criminal history, as well as the carve out for "intentional misrepresentation."

8

"no less material" and plaintiff was properly "disqualified simply because he had lied on his application")).[6] The same logic applies with equal force in the context of § 10(g).

That Plaintiff deliberately withheld that information is evident from the Amended Complaint, like it was from the original pleading. These facts, standing alone, render his claim not actionable under FCA pursuant to § 10(g). Opinion at 7. For this reason, and because the Amended Complaint adds nothing new, Plaintiff's FCA claim should be dismissed with prejudice.[7]

### 3. Plaintiff's Discriminatory Motive Argument Fails Because the Alleged Discriminatory Rationale—a Violation of the FCA—is Not Actionable.

Plaintiff also contends that the Company's rationale for terminating Plaintiff's employment—his now-twice-admitted violation of Section 6.2 of the Handbook—is not properly adjudicated on a motion to dismiss because the Court must allow Plaintiff to put forth alternative discriminatory theories for his termination, namely, his arrest in violation of the FCA. *See* Opp. at 17–19. Issues of "pretext" in traditional employment claims are often unable to be decided on a motion to dismiss because the reason offered by the employer are either omitted from the complaint or squarely in dispute. Those circumstances do not exist here. The discriminatory animus Plaintiff asserts he is entitled to an opportunity to prove, *i.e.*, discrimination based on his arrest history in violation of the FCA, is not actionable for the reasons the Court has already determined. *See* Opinion at 7; *supra* Section II(A)(1)–(2). In other words, Plaintiff is not entitled to put forth evidence of the "unlawful motive[]" regarding his termination because that motivation

---

[6] While the cited cases concerning § 752 of the New York Corrections Law predate the 2007 amendment to the Corrections Law that added the "intentional misrepresentation" language to § 751, they are nonetheless persuasive on the point that a current or prospective employee's decision to omit material information renders the adverse action justified.

[7] *See supra* n.3.

9

was categorically *not unlawful* under the FCA.  For this reason, the authority Plaintiff cites in support is inapposite and this argument fails.[8]

B.  **PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS FAIL.**

    1.  **Plaintiff's Attempt to Manufacture Temporal Proximity to Save His Discrimination Claims Should be Rejected.**

Plaintiff's Opposition does not dispute that his amended allegations concerning alleged disability discrimination are substantively identical to those in the Complaint.  Despite offering no new allegations that would undermine the Court's prior holding that "[t]he connection between Plaintiffs disability and his alleged discrimination is too attenuated" to survive a motion to dismiss, Opinion at 5, Plaintiff now contends the claim should be allowed to proceed based on "[t]he temporal proximity between [his] disclosure of his disability and his subsequent termination." *See* Opp. at 20.  As Plaintiff's own authority demonstrates and the allegations of the Amended Complaint establish, however, there is no such temporal proximity.

According to Plaintiff, the law "generally regard[s]" "gaps of two months or less" between the disclosure and the adverse action to be sufficient to allow for an inference of discrimination. *Id.* (citing *Kamiel* v. *Hai St. Kitchen & Co. LLC,* 2023 U.S. Dist. LEXIS 42026 (S.D.N.Y. Mar. 13, 2023)).  Yet, the Amended Complaint establishes that Plaintiff disclosed his purported disability on or about December 28, 2021—not two months, but nearly *five months* prior to his

---

[8] Plaintiff relies on *Franklin v. Whole Foods Mkt. Grp., Inc.*, 2022 U.S. Dist. LEXIS 14594 (S.D.N.Y. Jan. 26, 2022).  *See* Opp. at 18.  *Franklin* is inapposite.  While the court in *Franklin* held that the defendant's legitimate non-discriminatory reason for failing to hire the plaintiff (lying about prior convictions) was not appropriately resolved on a motion to dismiss, *id.* at *14, the plaintiff did not, as part of his pleading, as Plaintiff does here, allege facts establishing that he made misrepresentations regarding his criminal history.  *See id.* at *2.  Because Plaintiff admits his failure to disclose, that the Company's conduct "falls squarely under § 10(g)" is readily determinable from the face of the pleading such that dismissal is proper.  *See* Opinion at 7.

termination.[9]  *See* Am. Compl. at ¶¶ 11–13, 32.  Thus, Plaintiff's own cited standard demonstrates that the requisite temporal proximity needed to support an inference of discrimination is absent in the Amended Complaint.  What's more, binding precedent confirms that a temporal gap like the one pled here fails to establish temporal proximity for purposes of establishing a claim.  *See Santora v. Red Clay Consol. Sch. Dist.*, 580 F. App'x 59, 63 (3d Cir. 2014) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007)) (stating that "a gap of even three months between events is too long to establish causation using temporal proximity" and holding that a "nearly five month[]" gap between the protected speech and the adverse action was "fatal to [the plaintiff's] temporal proximity argument"); *Bartos v. MHM Corr. Servs.*, 454 F. App'x 74, 78 (3d Cir. 2011) (concluding that five month gap was not "unduly suggestive of a causal connection"); *Little v. Doe*, 2010 U.S. Dist. LEXIS 102472, at *24 (D.N.J. Sept. 28, 2010) (citation omitted) (holding no causation where there was five months between the protected activity and adverse employment action); *Colson v. Cablevision MFR, Inc.*, 2008 U.S. Dist. LEXIS 18488, at *6 n.13 (D.N.J. Mar. 11, 2008) ("Courts generally hold that if at least four months pass after the protected action without employer reprisal, no inference of causation is created.").

Recognizing that the temporal gap between the disclosure of his disability in December 2021 and his termination in May 2022 fails to support an inference of discrimination, the Opposition attempts to manufacture a new, more favorable time period.  Plaintiff implores the Court to ignore the time between when he alleges he disclosed his disability (December 2021),

---

[9] The Opposition's assertion that Plaintiff disclosed his disability on January 28, 2022 is inconsistent with the allegations of the Amended Complaint, wherein Plaintiff alleges that his FMLA paperwork identified Plaintiff as suffering from alcohol use disorder.  *See* Am. Compl. at ¶¶ 11–13.  Even if January 28, 2022 is used as the date Plaintiff disclosed his disability—which it should not be given the aforementioned allegations of the Amended Complaint—that date nonetheless places nearly a *four month* gap between the disclosure date and Plaintiff's termination.  By Plaintiff's implicit admission, this temporal gap does not create an inference of discrimination.

and instead cherry picks March 24, 2022 as the date the Court should use. *See* Opp. at 21. According to Plaintiff, the date Plaintiff exhausted his FMLA leave, March 24, 2022, should be the date of disclosure because the Company was "essentially barred from taking any adverse action against Plaintiff [while] he was on FMLA leave." *Id.* To call a spade a spade—Plaintiff, in the context of his lawsuit alleging that the Company discriminated against him and violated the FMLA, in the same breath also takes the inconsistent position that the Company would not have dared to violate the FMLA while he was actually utilizing FMLA leave. This convenient departure from logic should not operate to shrink the temporal gap. What is more, the Opposition is devoid of any authority that would suggest Plaintiff is entitled to casually disregard (or somehow toll) the actual date of the disclosure when doing so proves more favorable to his case. As the Opposition notes, the inquiry is into "the temporal proximity of an employee's disclosure of his disability to his termination," *id.* at 20, not some invented alternative timeline. The Amended Complaint clearly alleges that Plaintiff disclosed his disability on December 28, 2021, or very shortly thereafter. *See* Am. Compl. at ¶¶ 11–13. Accordingly, the absence of temporal proximity remains apparent even in the Amended Complaint and Plaintiff's state law discrimination claims under Counts I and II, like their predecessors, are due to be dismissed with prejudice.[10]

    **2.**    **Plaintiff's "Continuing Duty to Accommodate" Theory is One of His Own Creation, and His Failure to Accommodate Claim Remains Subject to Dismissal for the Reasons Previously Identified by the Court.**

Plaintiff contends that his failure to accommodate claim—which, again, has not been substantively modified since the Court's first dismissal of it—survives because his employment was terminated "at a time that he was requesting additional medical leave due to his disability."

---

[10] Like Plaintiff's other claims, it is clear that Plaintiff is unable to articulate any allegations that would allow his state law discrimination claims to survive dismissal. Accordingly, further amendment of this claim is futile and dismissal with prejudice is appropriate. *See supra* n.3.

12

*See* Opp. at 22. Not only is this assertion inconsistent with his allegations in the Amended Complaint, in which Plaintiff confirms that his two requests for leave were granted, but it does not otherwise operate to save this claim. As the Court previously noted when dismissing this identical claim in the first instance, "FMLA leave is not a reasonable accommodation . . . but rather a right enforceable under a separate statutory provision." Opinion at 6. Moreover, that Plaintiff was terminated *after* his FMLA leave expired on March 24, 2022 and while still on the Company's medical leave does nothing to displace the Court's prior ruling. The Opposition fails to articulate any reason as to why the authority cited in the Court's Opinion applies any differently given this fact or how this creates an actionable event. "[B]y nature," an employee seeking medical leave is "arguing that he cannot perform the functions of the job, while an employee requesting a reasonable accommodation communicates that he can perform the essential functions of the job." *Id.* The Court's prior conclusion rings equally true whether the leave sought is under the FMLA or the Company's policies. Simply put, there is no "continuing duty to accommodate" by allowing Plaintiff to return from leave before terminating his employment for violating Company policy.

Plaintiff's cited authority, none of which is binding on this Court, does not compel a different conclusion. While both *Williams v. AT&T Mobility Sens. LLC*, 847 F.3d 384 (6th Cir. 2017) and *Criado v. IBM Corp.*, 145 F.3d 437 (1st Cir. 1998) concern whether the *denial of leave* could, under certain circumstances, constitute denial of a reasonable accommodation, this case does not involve the denial of leave. Plaintiff admits his two requests for leave *were granted*. Am. Compl. at ¶ 26. The Opposition cites no authority that Plaintiff's termination—for his failure to disclose his arrest within seven (7) days per the Company's policies, a reason entirely separate from his request for FMLA leave—*after* his requests for leave were granted is actionable. Entirely absent from the Amended Complaint is an allegation that Plaintiff requested leave (the purported

13

accommodation) that the Company denied. Like before, Plaintiff's failure to accommodate claim once again fails. *See* Opinion at 5–6.

C. **THE OPPOSITION CONCEDES PLAINTIFF'S FMLA INTERFERENCE IS TO BE DISMISSED AND DOES NOTHING TO SAVE HIS RETALIATION CLAIM.**

Plaintiff's Opposition makes no argument as to his FMLA interference claim. *See* Opp. at 24–26 (arguing only FMLA retaliation); Motion at 20–21. Accordingly, Plaintiff has conceded that his interference claim must be dismissed. *See Roper v. Luzerne Cnty.*, 2023 U.S. Dist. LEXIS 45853, at *7 (M.D. Pa. Mar. 17, 2023) (citing *Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) ("The filing of a brief in opposition to a motion to dismiss that fails to respond to a substantive argument to dismiss a particular claim results in the waiver or abandonment of that claim."); *Lafferty v. Sherwin-Williams Co.*, 2018 U.S. Dist. LEXIS 141549, *9–10 (D.N.J. Aug. 21, 2018) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count."). Indeed, one of the few substantive additions to the Amended Complaint makes clear that Plaintiff's termination did not occur during his FMLA leave, which expired on March 24, 2022, months before his termination in May 2022. *See* Am. Compl. at ¶ 27; *see also* February 24, 2022 Letter (ECF No. 17-4); *Tighe v. Arconic Inc.*, 2021 U.S. Dist. LEXIS 101371, at *13–14 (D.N.J. May 28, 2021) (holding that where an employee has exhausted their leave, an employer cannot interfere with the employee's right to leave).

As to the FMLA retaliation claim, Plaintiff once again turns to temporal proximity and attempts (again unsuccessfully) to manufacture a shorter period. *See* Opp. at 25. Plaintiff first requested FMLA leave on or about December 28, 2021. *See* Am. Compl. at ¶ 11–13. His request to extend that leave was submitted (and granted) on or about January 31, 2022. *See id.* at ¶ 26–27. Plaintiff was not terminated until May 19, 2022, nearly *five* months after he first requested leave and nearly *four* months after he requested that leave be extended. *See id.* at ¶ 35. As per Plaintiff,

14

"gaps of two months or less" may be sufficient to establish temporal proximity. *See* Opp. at 20. Those facts do not exist here, and Plaintiff's attempt to tether his retaliation claim to the date on which his FMLA leave was exhausted is, like in the context of his state law discrimination claims *supra*, illogical and unsupportable.

Even if Plaintiff had established temporal proximity—he has not—"[e]vidence of temporal proximity, without more . . . is insufficient to demonstrate a causal link unless it is 'unusually suggestive' of retaliatory motive." Opinion at 8. The Amended Complaint is devoid of any allegation "unusually suggestive" of retaliatory motive and the Opposition fails to identify any. To the contrary, the Amended Complaint establishes precisely why Plaintiff was terminated in May 2022: his failure to disclose his arrest in violation of Company policy. *See* Am. Compl. at ¶¶ 37–39; *see also* Opinion at 2, 7. That the Company did not terminate Plaintiff's employment until several months after his FMLA leave was exhausted in no way supports an inference of discrimination—indeed, while the Opposition makes this statement, it fails to explain how this fact is at all indicative of discrimination. *See* Opp. at 25–26. Such a superficial assertion lacks support. If anything, it confirms that Partners Group, despite Plaintiff's violent felony, was compassionate and allowed Plaintiff time to attempt to recover before terminating his employment. For these reasons, and based on the absence of any new allegations, the Court's holding in the Opinion should stand and the FMLA retaliation claim should be dismissed with prejudice.[11]

### III.  CONCLUSION

For these reasons, and those set forth in the Motion, Partners Group respectfully requests that the Court grant the Motion and dismiss the Amended Complaint with prejudice.

---

[11] Here, too, dismissal with prejudice is warranted. The allegations of the Amended Complaint, even more so than its predecessor pleading, confirm that the conduct Plaintiff alleges the Company committed is not actionable under the FMLA. Accordingly, further amendment of this claim would likewise be futile. *See supra* n.3.

15

Dated:  June 26, 2023                           Respectfully submitted,

By: */s/ Jeffrey A. Sturgeon*

Jeffrey A. Sturgeon
Paul C. Evans
BAKER & MCKENZIE LLP
452 Fifth Avenue
New York, NY 10018
Tel: (212) 626-4100
jeffrey.sturgeon@bakermckenzie.com
paul.evans@bakermckenzie.com

*Attorneys for Defendant
Partners Group (USA), Inc.*